No. 95-186

IN THE SUPREME COURT OF THE STATE OF MONTANA
1995

RICHARD D. AUSTIN and VIRGINIA P. AUSTIN,
husband and wife,

       Plaintiffs and Respondents,

  v.

MARTHA KONOPACKI CASH and JOHN MICHAEL KONOPACKI,

       Defendants and Appellants,

  and

BRUCE A. YOUNG,

       Defendant,

  and

LOREN "GEORGE" EVERETT and ROSS HAFFNER, d/b/a WESTERN BROKERS,

       Third-Party Defendants.

FILED

NOV 14 1995

*Carl Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Eleventh Judicial District,
               In and for the County of Flathead,
               The Honorable Katherine R. Curtis, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

              Jeffrey D. Ellingson, Ellingson Law Offices,
              Kalispell, Montana

       For Respondent:

              Alan J. Lerner, Attorney at Law,
              Kalispell, Montana (for Austins)

              James E. Vidal, Murray & Kaufman,
              Kalispell, Montana (for Young)

              Mark L. Stermitz, Warden, Christiansen, Johnson
              & Berg, Kalispell, Montana (for Everett and Haffner)

                     Submitted on Briefs:  October 19, 1995
                             Decided:  November 14, 1995

Filed:

                                               Clerk

Justice Charles E. Erdmann delivered the opinion of the Court.

This is an appeal from the Eleventh Judicial District Court, Flathead County, which found an enforceable real estate contract between the parties, ordered specific performance, and awarded damages and attorney fees. We affirm in part and reverse in part.

We restate the issues on appeal:

1. Did the District Court err in concluding that a valid and enforceable contract existed between the Austins and Cash/Konopacki?

2. Did the District Court err in dismissing Cash/Konopacki's slander of title claim against the Austins?

3. Did the District Court err in dismissing Cash/Konopacki's counterclaim against Everett?

4. Did the District Court err in awarding costs and attorney fees to the Austins?

## FACTS

Martha Cash and John Konopacki are brother and sister who jointly owned approximately 19.5 acres in Flathead County. One acre was to the east of Highway 93, and 18.5 acres were to the west. Cash and Konopacki listed the properties for sale in separate listing agreements with Bruce Young of ReMax Realty in August and September 1992. Young entered the two listings into the multiple listing service. Cash had authority from Konopacki to negotiate and sign on his behalf, although she did not have a formal power of attorney.

2

Richard and Virginia Austin were looking for real estate to purchase in Flathead County. In October 1992, Mr. Austin contacted George Everett, a real estate agent in Kalispell, about securing property for a retirement home. The Austins owned two properties in California which were the subject of purchase agreements and were awaiting closing. Everett showed Mr. Austin the parcel owned by Cash and Konopacki. Relying on the multiple listing service listing and information received from Young, Everett thought there was only one parcel of land which contained the entire 19.5 acres. Although both Cash and Konopacki had signed the initial listing contracts, this was not known to Everett and he represented to the Austins that the sole owner of the property was Cash.

On November 6, 1992, Mr. Austin signed an offer prepared by Everett to purchase the entire 19.5 acres for $100,000 with $50,000 down and $50,000 payable on a note. The offer was also contingent on the closing of the Austins' California properties and required the sellers to cooperate in any land subdivision that may be required to execute a § 1031 tax deferred exchange.

Everett presented the offer to Young, who faxed it to Cash. On November 12, 1992, Cash signed a counteroffer and sent it to Young, who delivered it to Everett. The counteroffer clarified that the offer was only for the 18.5 acre parcel, that the price was $110,000, and that the sellers would not cooperate in subdividing the property for a § 1031 tax deferred exchange. Everett testified that he faxed the sellers' counteroffer to Mr.

3

Austin at his California office. Even though Austin testified that he did not remember receiving the fax, telephone records indicate that the counteroffer was faxed to him and that he then immediately called Everett.

Austin rejected the counteroffer and asked Everett to negotiate with the sellers for the purchase of all of the property. Everett went to Young's office where they called Cash on a speaker telephone. According to Cash and Young, Cash said she would consider the additional acre for an additional $5,000 from the Austins, but that she would first have to discuss it with her brother. According to Everett, Cash told him that she would add the additional property to the sellers' counteroffer for $5,000.

Everett then took the sellers' counteroffer which had been previously signed by Cash and added a handwritten paragraph including the additional acre for $5,000. Without obtaining Cash's signature or initials indicating the sellers' assent to the handwritten paragraph, Everett faxed the revised counteroffer to the Austins on November 17, 1992. Everett testified that he knew that both Cash and the Austins needed to sign or initial the revised counteroffer because it had been changed to include terms regarding the additional acre. Everett also testified that in a telephone conversation on November 17, 1992, he told Mr. Austin that he (Everett) had added the handwritten language pertaining to the purchase of the additional acre, although this is disputed by Austin.

4

Austin testified that when he received the revised counteroffer, he believed it had been signed by Cash. On the evening of November 17, 1992, the Austins signed the revised counteroffer and faxed it back to Everett on November 18, 1992. The Austins testified that in relying on their belief there was a binding contract, they reduced the price of one of their California properties by $45,000--a move they would not have made without a binding agreement to purchase the Montana property. Everett testified that upon receiving the revised counteroffer signed by the Austins, he faxed the document to Young intending to convey a counteroffer from the Austins back to Cash for her signature.

On November 18, 1992, Cash received an inquiry from Karen Nagelhus about purchasing the property. Nagelhus was referred to Young and ultimately made an offer on November 20, 1992, to purchase the property for $117,500. On November 19, 1992, Mr. Austin called Everett to see whether or not "we had a deal." The same day Everett faxed Austin a letter stating that the seller had not responded and that another offer was coming in. Young also advised Austin on November 19, 1992, that Cash had received another offer and that Austin had the right to change his offer, but that Cash did not intend to accept his counteroffer. On November 20, 1992, Everett wrote a letter to Young on behalf of the Austins, asserting that there was a binding contract between Cash and the Austins for the land lying west of Highway 93. On November 21, 1992, Cash and Konopacki accepted the Nagelhus offer.

5

On December 30, 1992, the Austins' attorney filed a *lis pendens* on the property. As a result of the *lis pendens*, the sellers were unable to give marketable title to Nagelhus and the sale did not close. Nagelhus entered into a "Closing Date Extension" agreement which extends the date of closing until 30 days after resolution of this litigation.

On January 26, 1993, the Austins brought an action seeking specific performance of the revised counteroffer which they claimed was a binding contract between themselves and the sellers. Cash and Konopacki counterclaimed for slander of title arising out of the *lis pendens* filed by the Austins. Cash, Konopacki, and Young brought a third-party complaint against Everett. A trial was held before the District Court without a jury. The District Court entered judgment for the Austins ordering specific performance of the contract and awarding to the Austins $7,500 in damages, together with attorney fees and costs. All other claims were dismissed. Cash and Konopacki appeal from the judgment, and the Austins have filed notice of a conditional cross-appeal.

### STANDARD OF REVIEW

Whether or not a contract exists is a combined issue of fact and law. Our review of a district court's finding of fact is set forth in Y A Bar Livestock Company v. Harkness (1994), 269 Mont. 239, 887 P.2d 1211, as follows:

> This Court reviews the findings of a trial court sitting without a jury to determine if the court's findings are clearly erroneous. Rule 52(a), M.R.Civ.P.

6

> A district court's findings are clearly erroneous if they are not supported by substantial credible evidence, if the trial court has misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been committed.

Y A Bar Livestock, 887 P.2d at 1213 (citing Interstate Prod. Credit Ass'n v. DeSaye (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287). We have defined substantial evidence to mean "more than a scintilla, but . . . less than a preponderance, of evidence." State v. Shodair (Mont. 1995), 902 P.2d 21, 26, 52 St. Rep. 879, 882 (citing Miller v. Frasure (1991), 248 Mont. 132, 137, 809 P.2d 1257, 1261).

We review a district court's conclusion of law to determine if the court's interpretation of the law is correct. Carbon County v. Union Reserve Coal Co. (Mont. 1995), 898 P.2d 680, 686, 52 St. Rep. 529, 533.

## ISSUE 1

Did the District Court err in concluding that a valid and enforceable contract existed between the Austins and Cash/ Konopacki?

Cash/Konopacki argue that the District Court's findings of fact are clearly erroneous and that its conclusion of law establishing the existence of a contract is incorrect. Cash/Konopacki claim there is no contract between the parties as a matter of law because the statute of frauds is not satisfied. They urge this Court to reverse the District Court's conclusion that the Austins were entitled to specific performance of the contract.

7

Cash/Konopacki argue that Everett significantly altered the language of the sellers' counteroffer by adding his own handwritten language changing the price, property and terms outlined in the original document.  They argue that because these changes were made after Cash had signed the original counteroffer and because they were made without being authorized by Cash/Konopacki or subscribed or initialled by Cash/Konopacki, Young, or Everett, a valid contract does not exist.

The Austins urge us to affirm the District Court's conclusion that a valid contract exists between the parties and that specific performance ordered by the District Court should be affirmed.  The Austins allege that Everett had authority to bind Cash/Konopacki to the revised counteroffer.  The Austins further argue that due to their part performance and acts made in reliance on the alleged contract, the contract is taken out of the statute of frauds.

In transactions involving real property, consent of the parties must be in writing.  Contracts for the sale of real property in this State must satisfy the statute of frauds which is codified as follows:

> 28-2-903.  **What contracts must be in writing.** (1) The following agreements are invalid unless the same or some note or memorandum thereof is in writing and subscribed by the party to be charged or his agent:
>
> . . . .
>
> (d)  an agreement for the leasing for a longer period than 1 year or for the sale of real property or of an interest therein. Such agreement, if made by an agent of the party sought to be charged, is invalid unless the authority of the agent is in writing and subscribed by the party sought to be charged.

8

**30-11-111. Contract for sale of real property.** No agreement for the sale of real property or of any interest therein is valid unless the same, or some note or memorandum thereof, be in writing and subscribed by the party to be charged or his agent thereunto authorized in writing; but this does not abridge the power of any court to compel the specific performance of any agreement for the sale of real property in case of part performance thereof.

In its findings of fact, the District Court determined that:

All of the exhibits, taken together, constitute a sufficient memorandum, signed by all parties to be charged, to satisfy the statute of frauds for all parcels of real property involved in this case. The documents, taken together, establish a meeting of the minds and a mutually binding contract for the sale of all parcels of real property involved in this case under the terms and conditions of Agreed Exhibit 6.

"Agreed Exhibit 6" is the sellers' revised counteroffer signed by the Austins. This finding of fact, in concluding that the documents taken together satisfy the statute of frauds, is actually a conclusion of law. We conclude that the District Court's interpretation of the law is incorrect.

The uncontroverted facts presented in the record indicate that the revised counteroffer from Cash/Konopacki to the Austins included Everett's handwritten addition to the sellers' original counteroffer and was not "subscribed" by Cash, Konopacki, Young, or Everett. Everett testified that he knew that both the buyer and seller would have to sign or initial the revised counteroffer indicating each parties' assent to his handwritten additions to the original document. Since neither Cash, Konopacki, Young, or Everett signed or initialled the additional handwritten language on behalf of the sellers, the contract was not properly "subscribed"

9

by the sellers or their agents and therefore does not satisfy the statute of frauds.

The Austins argue that the alleged contract should be taken out of the statute of frauds because of their part performance of the alleged agreement with Cash/Konopacki. The original counteroffer from Cash/Konopacki included a provision that the offer was conditioned on the sellers approving the Austins' sales contracts on their California properties. The Austins argue they partially performed the alleged contract with Cash/Konopacki by reducing the sales price on their California home by $45,000 in an effort to satisfy this condition.

The sufficiency of acts to constitute part performance can be decided as a matter of law. Schwedes v. Romain and Mudgett (1978), 179 Mont. 466, 472, 587 P.2d 388, 391 (citing Boesiger v. Freer (Idaho 1963), 381 P.2d 802). We have held that "[c]laimed acts of partial performance sufficient to take an otherwise unenforceable contract out of the statute of frauds must be unequivocally referable to that contract." Schwedes, 587 P.2d at 391 (citing Throndson v. Commissioner of Internal Revenue (Cal. 1972), 457 F.2d 1022). Acts undertaken by a party in contemplation of eventual performance are to be distinguished from acts which truly constitute part performance of the contract so as to take it out of the operation of the statute of frauds. Schwedes, 587 P.2d at 391. The Austins' reduction of the price of their California home by $45,000 was an act in contemplation of eventual performance and one

10

that is not unequivocally referable to the alleged contract with Cash/Konopacki.

The Austins argue that the District Court properly ordered specific performance of the contract. This Court will not grant the remedy of specific performance in connection with a purported agreement for the sale of land unless it is first established that there is a valid contract in existence. Thornton v. Songstad (1994), 263 Mont. 390, 393, 868 P.2d 633, 635. In Schwedes, 587 P.2d at 391, we cited with approval the following general rule:

> In order for equity to decree specific performance, it is necessary that there be in existence and in effect a contract valid at law and binding upon the parties against whom performance is sought, for specific performance is never applicable where there is no obligation to perform.

The Austins go on to argue that Cash/Konopacki are equitably estopped from denying an enforceable contract between the parties. Their argument centers around (1) the fact that they were unaware that Konopacki was a co-owner of the Cash/Konopacki property, and (2) that they relied to their detriment on a binding agreement to purchase the Montana property. First, the parties stipulated on the record that Cash had authority to sign for and bind Konopacki. Therefore, the fact that the Austins were unaware of Konopacki's interest in the property becomes moot. Second, we have stated that

> where a case is clearly within the statute of frauds, promissory estoppel is inapplicable, for the net effect would be to repeal the statute completely. The court cited [a] general rule that the moral wrong of refusing to be bound by an agreement because it does not comply with the statute of frauds, does not of itself authorize the application of the doctrine of estoppel, because the

11

breach of a promise which the law does not regard as binding is not a fraud.

Schwedes, 587 P.2d at 392 (quoting 56 A.L.R.3d at 1054, regarding Sinclair v. Sullivan Chevrolet Co. (Ill. 1964), 195 N.E.2d 250).

We conclude that because Cash/Konopacki or their agents did not give written approval to Everett's handwritten changes to the sellers' counteroffer, the contract was not "subscribed" by the party sought to be charged. The purported contract between the parties does not comply with the statute of frauds and is therefore not enforceable. Further, the facts of this case do not merit the application of the equitable doctrines of part performance and/or equitable estoppel. Therefore, we hold that the District Court erred in determining that a valid contract warranting specific performance existed and we reverse the District Court on this issue.

ISSUE 2

Did the District Court err in dismissing Cash/Konopacki's slander of title claim against the Austins?

Since Cash/Konopacki and Nagelhus have entered into a "Closing Date Extension Agreement," whereby the parties have agreed to extend the date of closing until 30 days after resolution of this lawsuit, we conclude that Cash/Konopacki will not be harmed as a result of the Austins filing a *lis pendens* on the property. We hold that the District Court properly dismissed Cash/Konopacki's claim for slander of title and we affirm the District Court on this issue.

12

## ISSUE 3

Did the District Court err in dismissing Cash/Konopacki's counterclaim against Everett?

Since we held that a valid and enforceable contract did not exist between the Austins and Cash/Konopacki, the counterclaim brought by Cash/Konopacki against Everett becomes moot. We therefore hold that the District Court did not err in dismissing this claim and we affirm the District Court on this issue.

## ISSUE 4

Did the District Court err in awarding costs and attorney fees to the Austins?

Based on our holdings above, we conclude that neither party shall be awarded costs and attorney fees. There is no agreement stipulating such relief and no statute confers such a right in this case. We hold that the District Court erred in awarding costs and attorney fees to the Austins and we reverse the District Court on this issue.

The Austins are free to pursue any and all tort damage claims as allowed by law, however, this Court renders no opinion as to the merits of those claims.

_____
                Justice

We concur:

_____

Justices