No. 96-367

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

IN RE MARRIAGE OF

PEGGY DUNN,

      Petitioner and Respondent,

  and

HOWARD DUNN,

      Respondent and Appellant.

FILED

APR 1 - 1997

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Ronald F. Waterman; Gough, Shanahan,
          Johnson & Waterman; Helena, Montana

      For Respondent:

          Mark E. Miller; Landoe, Brown, Planalp
          & Braaksma; Bozeman, Montana

Submitted on Briefs: February 13, 1997

Decided: April 1, 1997

Filed:

_____
Clerk

Justice Jim Regnier delivered the opinion of the Court.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1995 Internal Operating Rules, the following decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to State Reporter Publishing Company and West Publishing Company.

Howard Dunn appeals from the findings of fact and conclusions of law setting forth the distribution of marital property and the maintenance award to Peggy Dunn as ordered by the Eighteenth Judicial District Court, Gallatin County. We affirm.

Three issues are before this Court:

1. Did the District Court err by including the business trust property in the marital estate?

2. Did the District Court equitably divide the marital property?

3. Did the District Court err by awarding maintenance to Peggy?

Howard and Peggy were married on March 28, 1958. Both Howard and Peggy are 59 years of age. They have three adult children, none of whom require assistance from either parent. Howard has recently retired from AT&T. Peggy worked as a homemaker and is currently employed part-time at a nursing home. Both Howard and Peggy have serious health problems. Howard had his foot amputated due to circulation problems. Peggy has undergone three separate angioplasty procedures.

2

Included in the marital assets was a storage business Howard owned and operated along with his brother, Jack. Howard and Jack attempted to shelter the business in a "business trust" which was sold to them by an insurance salesman. The value of Howard's share of the business is over $100,000. Further, the income from the business is approximately $22,000 per year. Under the terms of the business trust, both Howard and Jack can withdraw monies from the trust without permission of the trustees.

In its apportionment of the marital assets, the District Court took the following factors into account; the parties' ages, health, occupations, employability, ability to earn income, and liabilities. Peggy was awarded the family residence, with a net value of $84,610; half of Howard's AT&T pension and lump sum survivorship, valued at $77,263; half of the equity in the storage business, valued at $45,563; and designated personal property for a total award constituting 66 percent of the marital estate. Howard was given personal property, half of his pension, and half of the equity in the storage business for a total award constituting 34 percent of the marital estate.

This case arises from the dissolution of the couple's thirty-seven year marriage. In determining the parties' income, the District Court found that Peggy has a monthly income of $960 and expenses of $1735. Howard has a monthly income, excluding any income from the storage business, of $1658 and expenses of $1625. The District Court awarded Peggy $468 a month, one-half of Howard's pension. The District Court determined that Howard earned income

3

of $450 per month from the storage business. The District Court awarded half of that amount, $225, to Peggy as maintenance. Howard appeals.

## ISSUE 1

Did the District Court err by including the business trust property in the marital estate?

The District Court determined that the storage business owned and operated by Howard and his brother was part of the marital estate. We review a district court's findings of fact and will uphold the division of marital property unless it is clearly erroneous. If substantial credible evidence supports the court's findings and judgment, this Court will not change the district court's decision unless the court abused its discretion. *Austin v. Cash* (1995), 274 Mont. 54, 59, 906 P.2d 669, 672; *In re Marriage of Smith* (1995), 270 Mont. 263, 267-68, 891 P.2d 522, 525.

Howard argues that the storage unit business should not have been included in the marital estate for two reasons. First, it was purchased with his disability income. Second, the storage unit business had been transferred to a business trust with separate trustees and designated beneficiaries. Howard argues that disability payments belong to the injured spouse and are not subject to division and distribution between the parties unless the disabled spouse commingles the funds with the marital estate. Howard states that there is no evidence that the business has been commingled with other assets.

4

Howard's disability argument fails for two reasons. First, it was not raised in the dissolution proceedings and therefore, this Court will not consider it on appeal. *In re Marriage of Binsfield* (1995), 269 Mont. 336, 344, 888 P.2d 889, 894. Second, the record does not support Howard's argument that he purchased the property solely with his disability income. The record and the testimony of both parties show that, together, Howard and Peggy paid $500 as a down payment for the storage unit business. The District Court also found that Peggy was involved in the business, provided input in management, and helped clean up the lots.

In evaluating the storage unit business, the District Court found that Howard and his partner, Jack Dunn, attempted to shelter the business in a "business trust." The District Court found that the "business trust" was not a trust at all. Howard and Jack were able to withdraw monies without the permission of the trustees. Although the trust was to be held for Howard's and Jack's children as designated beneficiaries, there was no delivery of beneficial shares to the children, nor were they informed that they were trust beneficiaries. Also, the trust was revocable. The District Court found that through the use of dummy trustees and control of money, Howard and Jack retained dominion and control over the business. For these reasons, the business was found not to be trust property.

We conclude that the District Court correctly included the storage business in the marital estate. The facts demonstrate that Howard and Jack retained dominion and control over the business. Both could withdraw money at any time without permission of the

5

trustees. The District Court properly found that the trust attempt failed to legally divest Jack and Howard from actual ownership and control of the business property. Therefore, the District Court's findings regarding the storage business are not clearly erroneous and the District Court did not abuse its discretion in including one-half of the equity of the storage business in the marital estate.

## ISSUE 2

Did the District Court equitably divide the marital property?

As stated above, in reviewing factual findings which divide marital property, our standard of review is "whether the district court's findings are clearly erroneous." *In re Marriage of Danelson* (1992), 253 Mont. 310, 317, 833 P.2d 215, 219. We review the district court's conclusions of law *de novo* and examine whether the court correctly interpreted the law. *Marriage of Danelson*, 253 Mont. at 317, 833 P.2d at 219-20.

The allocation of marital property is analyzed under § 40-4-202(1), MCA, which provides in pertinent part:

> In making apportionment, the court shall consider the duration of the marriage and prior marriage of either party; the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties; custodial provisions; whether the apportionment is in lieu of or in addition to maintenance; and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution or dissipation of value of the respective estates and the contribution of a spouse as a homemaker or to the family unit. In dividing property acquired prior to the marriage; property acquired by gift,

6

bequest, devise, or descent; property acquired in exchange for property acquired before the marriage or in exchange for property acquired by gift, bequest, devise, or descent; the increased value of property acquired prior to marriage; and property acquired by a spouse after a decree of legal separation, the court shall consider those contributions of the other spouse to the marriage, including:

    (a)   the nonmonetary contribution of a homemaker;

    (b)   the extent to which such contributions have facilitated the maintenance of this property; and

    (c)   whether or not the property division serves as an alternative to maintenance arrangements.

The district court must achieve an equitable distribution of the marital estate, not an equal distribution. *In re Marriage of Shelton* (1986), 219 Mont. 456, 459, 712 P.2d 782, 784. We grant the district court broad discretion to equitably apportion the marital property. *In re Marriage of Sirucek* (1985), 219 Mont. 334, 342, 712 P.2d 769, 774.

Howard argues that the District Court erred in failing to explain why it did not divide the marital estate equally. Howard explains that although § 40-4-202, MCA, vests the District Court with broad discretion, the District Court must explain its rationale for the property division. Without an explanation, the District Court's decision must be erroneous. Specifically, Howard questions the District Court's award to Peggy of $220,000 from the marital estate while he was awarded only $114,000.

A district court need not set forth a specific reason for its equitable division. *In re Marriage of Mouat* (1987), 228 Mont. 430, 433, 743 P.2d 602, 604. In its apportionment of the marital assets, the District Court took into account the following factors; the

7

parties' ages, health, occupations, employability, and ability to earn income and pay liabilities. The District Court noted that Peggy is of questionable health and will require heart surgery. The District Court also noted that she has limited employment opportunities and will be eligible to retire in less than four years. In this case, the District Court's findings of fact sufficiently support its ultimate property division.

The District Court's findings as to the division of marital property are well supported by substantial evidence in the record and are not clearly erroneous. We hold that the District Court properly followed § 40-4-202(1), MCA, and correctly interpreted the law.

## ISSUE 3

Did the District Court err by awarding maintenance to Peggy?

Howard argues that maintenance is only required when the spouse seeking maintenance lacks sufficient property to provide for her reasonable needs and she is unable to support herself through appropriate employment. *See* § 40-4-203, MCA. Howard claims that maintenance is not proper in this case for several reasons. Howard asserts that Peggy's financial resources are adequate to provide for her needs, that the award should not be unlimited in its period of payment, and that he is unable to pay the maintenance award.

The court awarded Peggy $225 per month in maintenance without specifying a time limit. Howard argues that before a court makes an award of maintenance, there must be an equitable division of

8

property. *In re Marriage of Scott* (1990), 246 Mont. 10, 24, 803 P.2d 620, 629. He further contends that a reversal of the property division also requires a reversal of the maintenance award. *See In re Marriage of Vivian* (1978), 178 Mont. 341, 583 P.2d 1072. Because we have determined that the property division in this case was equitable, we are not required to reverse the court's maintenance award. *See Marriage of Vivian*, 178 Mont. at 345, 583 P.2d at 1075.

A maintenance award will not be overturned unless the district court's findings are clearly erroneous. *In re Marriage of Sacry* (1992), 253 Mont. 378, 381, 833 P.2d 1035, 1037. Maintenance is governed by § 40-4-203, MCA. That statute provides that the court may award maintenance if it finds that the spouse seeking maintenance:

> (a) lacks sufficient property to provide for his reasonable needs; and
> (b) is unable to support himself through appropriate employment . . .
> (2) The maintenance order shall be in such amounts and for such periods of time as the court deems just, without regard to marital misconduct, and after considering all relevant facts including:
> (a) the financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently . . .
> (b) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;
> (c) the standard of living established during the marriage;
> (d) the duration of the marriage;
> (e) the age and the physical and emotional condition of the spouse seeking maintenance; and
> (f) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

9

Section 40-4-203, MCA.

Substantial evidence exists to support the court's finding that Peggy does not have sufficient income to pay her monthly expenses. Peggy's living expenses average $1735 per month. She must pay rent of $500 a month and provide for her own trailer and car insurance. From her present employment, Peggy will earn a net monthly pay of between $861 and $960. She will also receive half of Howard's pension, an amount of $468 a month. That gives her a total of $1428 in monthly income. Comparing her income against her expenses, she is left with a shortfall of $307. The District Court found that Peggy will be unable to meet her needs, and thus, her standard of living will decrease. This Court concludes that the District Court properly considered the factors set forth in § 40-4-203, MCA, in determining the award of maintenance.

Howard argues that the District Court abused its discretion in not placing a time limit on the award of maintenance to Peggy. Based on the evidence before it, the District Court did not forecast a date in the future when the amount of maintenance required would be less than $225 a month or nothing at all. In an exercise of its discretion, the District Court made a determination which provides for maintenance without a time limit. If circumstances in the future change, Howard may petition the District Court for modification of the maintenance award under § 40-4-208, MCA. This Court has no basis to impose a time limit on the award for maintenance in this case.

10

Howard further contends that the award of maintenance was improper because he is unable to pay maintenance and meet his personal expenses at the same time. He argues that his ability to pay should be the deciding factor in determining the propriety of a maintenance award. This is not so. While the husband's ability to meet his personal needs is an element that should be given great weight, it is not always the determining factor. Each case depends on its own facts. *In re Marriage of Cole* (1988), 234 Mont. 352, 358, 763 P.2d 39, 43.

We hold that the award of maintenance by the District Court was not clearly erroneous.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices