No. 04-637

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 261

JOHN B. PATTERSON, JR.,

Plaintiff and Appellant,

v.

VERIZON WIRELESS,

Defendant and Respondent.

APPEAL FROM:    The District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DV 2002-849,
Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Edward A. Murphy, Datsopoulos, MacDonald & Lind,
Missoula, Montana

For Respondent:

Oliver H. Goe and Trevor L. Uffelman, Browning, Kaleczyc,
Berry & Hoven, Helena, Montana

Submitted on Briefs:  May 3, 2005

Decided:   October 25, 2005

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     Appellant John B. Patterson (Patterson) appeals from the order of Montana's Fourth Judicial District Court, Missoula County, granting summary judgment in favor of Respondent Verizon Wireless.  We affirm.

¶2     We consider the following issue on appeal:

Did the District Court err in granting summary judgment to Respondent Verizon Wireless?

## BACKGROUND

¶3     As early as 1995, Bell Atlantic Corporation and Vodafone Air Touch Plc began discussing opportunities for collaboration in the burgeoning wireless telephone market.  To further collaboration, those companies entered into a partnership and created an entity known as Cellco.  Cellco, in turn, began doing business as Verizon Wireless.   In 2000, and in furtherance of the partnership, Bell Atlantic and Vodafone Air Touch Plc signed a "Secondment Agreement" whereby Vodafone Air Touch Plc would provide employees to staff Cellco /Verizon Wireless  (Verizon).  As to the employment status of those employees loaned to Verizon by Vodafone Air Touch Plc, the Secondment Agreement, § 2.1(a) stated,

> (a) Seconded employees will remain employees of Vodafone, but will perform services exclusively for the Partnership; . . . .

Despite remaining employees of Vodafone, however, it was Verizon, and not Vodafone, which had the absolute right to fire "seconded" employees.

¶4    Air Touch Communications, an affiliate of Vodafone, employed Appellant Patterson as a district manager in Missoula prior to the creation of Verizon.  However, in May of 2000, Verizon notified Patterson by letter that he had been assigned to work exclusively for Verizon.  That letter also stated that though Patterson would be working for Verizon exclusively, he would "remain an employee of Vodafone / Air Touch or one of its affiliates."  Though Patterson appears to believe Verizon "acquired" Air Touch in May of 2000, it is clear that Verizon was the product of the joint venture between Vodafone Air Touch Plc and Bell Atlantic Corporation.

¶5    Five months after Patterson began performing services for Verizon, restructuring forced the elimination of his position, effective December 1, 2000.  Patterson was notified accordingly by letter on October 2, 2000.  The letter also informed Patterson that he had been designated a participant in the "Air Touch Communications Severance Plan," and indicated he could receive $23,978.22 if he elected to participate in the Plan.  Included with the "Air Touch Communications Severance Plan" was a "Severance Agreement and Release," and both indicated that in order to participate in the Severance Plan, Patterson would have to release Air Touch and all "affiliates" from,

> all rights, claims, and actions which the Participant has or may in the future have arising out of, relating to, or in connection with the Participant's employment with any Releasee and the termination thereof.

¶6    After reviewing the "Severance Agreement and Release" and the "Air Touch Communications Severance Plan," Patterson elected not to sign the  agreement, and instead initiated an employment discrimination claim against Verizon Wireless on December 21,

2000. In a deposition, Patterson admitted that one of the reasons he did not sign the "Severance Agreement and Release" was because he did not want to give up his employment discrimination claims. After review, the Human Rights Bureau dismissed the employment discrimination claim as meritless. Thereafter, about one year after receiving the severance offer, Patterson signed the "Severance Agreement and Release" and mailed it to Verizon.

¶7 Verizon refused to honor the severance plan, and communicated such to Patterson on December 21, 2001. It cited the one-year delay in Patterson's response, the ending of the severance program, and Patterson's employment discrimination claim as reasons for the claim's denial.

¶8 Patterson then filed a claim with the District Court on September 25, 2002, claiming entitlement to the severance benefits. Verizon moved for dismissal for failure to state a claim. The District Court converted that motion into a Motion for Summary Judgment and denied it. Following discovery, Verizon again moved for summary judgment, which was granted by the District Court. Patterson appeals.

## STANDARD OF REVIEW

¶9 We review district court grants of summary judgment *de novo*. *Abraham v. Nelson*, 2002 MT 94, ¶ 9, 309 Mont. 366, ¶ 9, 46 P.3d 628, ¶ 9. Summary judgment, however, is an extreme remedy, and is only appropriate when there is no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. *Lee v. USAA Casualty Insurance Co.*, 2001 MT 59, ¶ 25, 304 Mont. 356, ¶ 25, 22 P.3d 631, ¶ 25. If there are genuine issues of material fact, summary judgment is inappropriate.

4

DISCUSSION

¶10    The District Court addressed three difficult issues: (1) whether Verizon "employed" Patterson; (2) whether Verizon obligated itself to pay severance benefits to Patterson; and (3) whether Patterson forfeited his option to participate in the severance plan when he filed an employment discrimination claim against Verizon. We conclude that issue three is dispositive and therefore do not address issues one and two.

¶11    Four elements are essential to the existence of a contract: (1) identifiable parties capable of contracting, (2) consent, (3) a lawful object, and (4) a sufficient cause or consideration. Section 28-2-102, MCA (1999); *see also Keesun Partners v. Ferdig Oil Co.* (1991), 249 Mont. 331, 337, 816 P.2d 417, 421. As to consent, it must be mutual. Section 28-2-301, MCA (1999). However, consent is not mutual "unless the parties all agree upon the same thing in the same sense . . . ." Section 28-2-303, MCA (1999); *see also Polich v. Severson* (1923), 68 Mont. 225, 230, 216 P. 785, 787. Finally, an acceptance upon terms "varying from those offered is a rejection of the offer, and puts an end to the negotiation, unless the party who made the original offer renews it, or assents to the modification suggested." *Brophy v. Idaho & Provision Co.* (1904), 31 Mont. 279, 286, 78 P. 493, 495. Having rejected an offer, an offeree cannot later revive the contract via acceptance. *Brophy,* 31 Mont. at 286, 78 P. at 495.

¶12    Appellant Patterson received the offered severance package by mail on October 2, 2000. The package, known as the "Air Touch Communications Severance Plan," included

5

the "Severance Agreement and Release." The "Severance Agreement and Release" stated at paragraph 5(a) that:

> In consideration of the payments to be made under this Agreement by the Participating Entity, the Participant, on behalf of himself or herself, his or her successors and assigns, hereby fully releases and discharges the Participating Entity and all Affiliates, and the directors, officers, employees, representatives, agents, employee benefit plans, shareholders, predecessors, successors and assigns of each (collectively "Releasees") from all rights, claims, and actions which the Participant has or may in the future have arising out of, relating to, or in connection with the Participant's employment with any Releasee and the termination thereof.

¶13 Three things are clear from the "Severance Agreement and Release" and "Air Touch Communications Severance Plan." First, there is no question that the agreement and release envisioned Verizon as an Air Touch affiliate and "Releasee." The "Air Touch Severance Plan," defined affiliate as follows:

> (a) "**Affiliate**" means the Company and any entity in which the Company or any subsidiary of the Company owns a direct or indirect interest.

As Air Touch owned a direct or indirect interest in Verizon, they were affiliates as that term is used in the Severance Plan.

¶14 Second, the "Air Touch Severance Plan" made clear that severance benefits would not be paid unless the employee signed the release.

> (c) **Must Sign Release** - No Participant shall be entitled to receive any Severance Benefits under the Plan unless he or she has completed and executed the Release provided to the Participant under the Plan. The Release shall provide that execution by the Participant shall constitute a waiver and release of every claim the Participant might otherwise have arising out of his or her employment and the termination thereof . . . .

6

¶15    Finally, it is clear that the severance offer was conditioned upon Patterson releasing "all" of his claims against Air Touch and Verizon. The "Severance Agreement and Release" specifically provided that Patterson would have to release Air Touch and its affiliates "from all rights, claims, and actions which the Participant has or may in the future have arising out of, relating to, or in connection with the Participant's employment with any Releasee and the termination thereof." The record is clear that Appellant Patterson fully understood this requirement. In fact, he stated at deposition that one of the main reasons he did not sign the "Severance Agreement and Release" originally was because he did not want to waive his employment discrimination claims.

¶16    Patterson elected not to sign the "Severance Agreement and Release" and instead pursued an employment discrimination claim against Verizon. Then, when his claim was unsuccessful, he tried to accept the severance offer. Clearly, Patterson's discrimination claim would have been "released" had Patterson signed the agreement, as it arose out of his employment with Verizon and Air Touch. Nonetheless, Patterson argues today that his purported acceptance of severance in October of 2001 created an enforceable contract entitling him to benefits. This argument fails.

¶17    When Patterson filed his claim against Verizon with the Montana Human Rights Commission, he forfeited his ability to accept the Air Touch severance package because his filing of the claim rejected a key term of the offer–a release of all claims. As noted in *Brophy*, "an acceptance upon terms varying from those offered is a rejection of the offer . . . ." 31 Mont. at 286, 78 P. at 495. Here, by the terms of the offer, Patterson was to

7

receive severance if he released "all" of his employment-related claims. Patterson's filing of a claim against Verizon was completely inconsistent with the terms of the offer, making it impossible for him to accept it. The impossibility is evident since, as of the date of his employment discrimination claim, he could no longer release *"all"* of his claims. As such, in filing the claim, he effectively rejected the severance package offer.

¶18     Finally, though obvious, we note that the Severance Plan's release provision was material to the contract. Both parties conceded its importance, and, as the severance documents make clear, signing the release was required for participation in the plan and for receipt of benefits thereunder. As such, the provision was material to the agreement.

¶19     Because he rejected the severance package as of December 21, 2000, Patterson's purported acceptance of severance in October of 2001 was, at best, a counteroffer. While Verizon was free to accept a counteroffer, it is clear from the record that it did not. Consequently, because Patterson rejected the severance offer by filing a claim against Verizon, and because Verizon did not accept his counteroffer, no contract arose between the parties with regard to severance benefits, and therefore, Patterson is not entitled to severance benefits.

¶20     Affirmed.

/S/ JIM RICE

We concur:

/S/ JAMES C. NELSON

/S/ PATRICIA O. COTTER
/S/ JOHN WARNER
/S/ BRIAN MORRIS