DA 08-0518

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2009 MT 266

DAVID D. ZIER,

        Plaintiff and Appellant,

  v.

REX H. LEWIS, Trustee of the MARK R. LEWIS
and CHARLOTTE H. LEWIS CHARITABLE
REMAINDER UNITRUST,

        Defendants and Appellees.

APPEAL FROM:    District Court of the Twenty-Second Judicial District,
In and For the County of Carbon, Cause No. DV 06-57
Honorable Blair Jones, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Thomas E. Towe; Towe, Ball, Enright, Mackey & Sommerfeld,
          Billings, Montana

      For Appellees:

          Laurence R. Martin; Felt, Martin, Frazier & Weldon, Billings,
          Montana

Submitted on Briefs:  July 8, 2009

Decided:  August 14, 2009

Filed:

_____
                          Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 David Zier appeals from the orders of the District Court granting summary judgment for the Lewis Charitable Remainder Unitrust (Lewis) and awarding attorney fees. We affirm.

¶2 Zier presents the following issues for review:

¶3 Issue One: Whether the District Court properly granted summary judgment to Lewis.

¶4 Issue Two: Whether the District Court properly awarded attorney fees to Lewis.

## PROCEDURAL AND FACTUAL BACKGROUND

¶5 This action arose from the efforts of Zier and Lewis to reach agreement on the terms of the sale to Zier of several thousand acres of land in Carbon County, Montana. When those efforts failed, Zier sued for specific performance of the sale, for damages he claimed from having sold another piece of property in anticipation of the sale, and for attorney fees and costs.

¶6 Lewis owned the ranch property at issue and advertised it for sale. On November 17, 2005, Zier sent a letter to Lewis offering to purchase the ranch for $425,000 and enclosing a check for earnest money in the amount of $10,000. The letter contained other proposals, including terms regarding wind generation rights and mineral interests on the property.

¶7 On December 1, 2005, Zier phoned Sondra Wolsieffer, Lewis' business manager, to discuss his offer to purchase the ranch. Zier contends that during the call, Rex Lewis

got on the line and accepted the offer. According to Zier's arguments on appeal, the parties entered a contract to purchase the ranch at this point, and it is this contract that he seeks to enforce. While Lewis denied that he accepted Zier's offer during the phone conversation, Zier contends on appeal that whichever version of the call is relied upon, "the result is the same. A binding contract was entered into."

¶8 On December 15, 2005, Zier wrote Wolsieffer, stating his conclusion that his offer to purchase had been accepted in the December 1 phone conversation. The letter also noted conditions that Lewis would retain the right to negotiate a wind energy lease, and that Zier would retain "surface rights" to the property. Wolsieffer responded by email, acknowledging receipt of the letter and stating that they had contacted their attorney to request "changes in the easement." Two weeks later Zier sent Wolsieffer an email in which he stated that the deal "will probably be ready to close by January 30, or possibly sooner." Wolsieffer responded by email, stating that they were "moving along with the documents" and that they would be sent to Zier for review. During this time Zier sold property in Wyoming and planned to use part of the proceeds to purchase the Lewis property.

¶9 On January 23, 2006, Wolsieffer sent a document titled "Agreement to Sell and Purchase" to Zier. The document included a property description, an easement to develop wind energy, and a wind energy development agreement. The documents gave Lewis a perpetual easement to develop all of the wind energy on the property, with half the net revenues going to Zier. The documents provided that Zier would be compensated for any damages to improvements that resulted from wind development.

3

¶10 Zier called Wolsieffer to discuss his objections to the proposed contract and the fact that it was different from "the offer" he had made. Zier wanted terms to provide for reimbursement for damages due to the loss of the "use of the land" resulting from wind development, and not just reimbursement for damages to improvements. Zier then consulted with attorney Tom Towe, who sent Wolsieffer a letter on February 1, 2006, detailing objections to the proposed agreements, and containing a revised set of documents. Specifically, Towe stated that Zier would not give up all wind development rights; that he wanted 50% of the gross wind proceeds not net proceeds; that Zier "vigorously" objected to excluding environmental disclosure responsibilities; and that Lewis should be responsible for any required future environmental cleanup. The revised documents sent by Towe specifically provided that Zier could withdraw the offer to buy at any time unless it was accepted in writing by February 10, and that the offer would be automatically withdrawn if not accepted by that time.

¶11 Lewis terminated negotiations for the sale of the property after the February 1, 2006, letter from Towe. An attorney for Lewis sent Towe a letter of February 7, 2006, returning the earnest money check and stating that Lewis was not interested in further discussions based upon the terms demanded in the February 1 letter.

¶12 On May 1, 2006, Zier filed a "Complaint for Specific Performance" and a lis pendens on the property. Zier sought specific performance of the sale of the property, damages for breach of contract, and an award of attorney fees and costs. The District Court entered a Memorandum and Order on February 19, 2008, granting summary judgment to Lewis on the ground that there was no enforceable contract for the sale of the

4

property, and awarding attorney fees and costs to Lewis.  On September 23, 2008, the District Court entered its order awarding Lewis $87,229.25 in attorney fees and $1,926.55 in costs.  Zier appeals.

## STANDARD OF REVIEW

¶13    This Court reviews de novo a district court's decision on a motion for summary judgment, applying the same criteria found in M. R. Civ. P. 56.  *State Farm v. Gibson*, 2007 MT 153, ¶ 9, 337 Mont. 509, 163 P.3d 387.

¶14    A district court's equitable decision to award attorney fees is reviewed to determine whether any factual findings are clearly erroneous and whether the court's interpretation of the law is correct.  Section 3-2-204(5), MCA;  *Kauffman-Harmon v. Kauffman*, 2001 MT 238, ¶ 11, 307 Mont. 45, 36 P.3d 408.  The amount of attorney fees is reviewed for abuse of discretion.  *Chase v. Bearpaw Ranch Assoc.*, 2006 MT 67, ¶ 15, 331 Mont. 421, 133 P.3d 190.

## DISCUSSION

¶15    *Issue One:  Whether the District Court properly granted summary judgment to Lewis*.  After the close of discovery, the District Court granted summary judgment to Lewis on the issue of whether there was a contract to sell the land, relying  on "only those facts which the parties have agreed to in their briefs or do not contest, the documents which were communicated between the parties, and the statements of Plaintiff Zier."  The District Court found "no factual dispute with respect to any material fact necessary for Zier to establish the elements of his contract claim." The District Court concluded that Montana law, provides that:

No agreement for the sale of real property or of any interest therein is valid unless the same, or some note or memorandum thereof, be in writing and subscribed by the party to be charged or his agent thereunto authorized in writing; but this does not abridge the power of any court to compel the specific performance of any agreement for the sale of real property in case of part performance thereof.

Section 30-11-111, MCA. Similar provisions are found in § 28-2-903(1)(d), MCA. An agreement for the sale of real property, if made by an agent, is "invalid unless the authority of the agent is in writing and subscribed by the party sought to be charged." Section 28-2-903(1)(d), MCA.

¶16 The District Court found that Zier's evidence of email correspondence between himself and Wolsieffer was not sufficient to satisfy the requirements for a written agreement subscribed by Lewis, the party sought to be charged. Zier did not present any evidence of a writing that Wolsieffer, as Lewis' agent, had authority to enter into an agreement to sell the property. Further, Zier's arguments that Wolsieffer had ostensible authority to bind Lewis were unavailing in light of the clear requirements that the agent's authority must be proven by a writing subscribed by Lewis.

¶17 The District Court also held that Zier had failed to present evidence sufficient to establish all the material elements of an agreement to sell property, and particularly mutual consent. The emails and letters relied upon by Zier as containing all the material elements and conditions of the sale instead established "the absence of mutual consent and show that no agreement was reached on material contractual terms. . . . " The District Court found that even if Wolsieffer had written authority to sell the land, she never told Zier that his offer to purchase had been accepted and instead told him that

6

Lewis' attorney was preparing a contract for review. Zier never signed the contract proposed by Lewis and countered with the February 1 contract from Towe. The District Court concluded "that because material elements of a real estate contract for the sale of the Lewis Ranch were not mutually agreed to in writing prior to the Lewis Trust notifying Zier that negotiations were concluded, Zier cannot establish that a binding real estate contract was formed between the parties."

¶18 The District Court considered the elements of the sale that were not settled at the time Lewis broke off negotiations. They included whether the wind development proceeds would be split on a gross or net basis; inclusion of a BLM lease; compensation for surface damages; and financial responsibility for future environmental remediation. Rather than being mere details, the District Court found that these points went "to the heart and substance of the agreement between the parties." These unsettled points, plus the fact that Towe's February 1 letter contained a deadline for Lewis to accept the conditions in writing, all indicated to the District Court that no binding real estate contract was ever formed between the parties.

¶19 The essential elements of any contract are identifiable parties capable of contracting, consent, a lawful object, and sufficient consideration. *Patterson v. Verizon Wireless*, 2005 MT 261, ¶ 11, 329 Mont. 79, 122 P.3d 1193. Consent must be mutual, and the parties must agree upon the same thing, in the same sense. *Patterson*, ¶ 11. Acceptance of an offer on terms varying from those offered is a rejection of the offer, putting an end to the negotiation unless there is assent to the new terms. *Patterson*, ¶ 11. Montana adheres to the "statute of frauds," which requires that when the contract

involves the sale of real property, consent of the parties must be in writing. Sections 28-2-903 and 30-11-111, MCA; *Austin v. Cash*, 274 Mont. 54, 60, 906 P.2d 669, 673 (1995).

¶20 The District Court held that there was no contract between Zier and Lewis because there was no consent to the terms of a contract. While Zier contends that a contract was formed during a telephone conversation between himself, Wolsieffer, and Lewis, the subsequent actions of all the participants belie this contention. First, despite Zier's contention that he believed there was a contract and his reliance upon emails sent by Wolsieffer, nowhere in those emails is there an express acceptance of Zier's offer to buy the Lewis property. Contrast this with the telegram in *Hillstrom v. Gosnay*, 188 Mont. 388, 391, 614 P.2d 466, 468 (1980), in which the seller stated: "Please consider this as my written acceptance of that offer made on my real estate. . . ."[1]

¶21 There are no similar written words of agreement by Lewis. In addition to the absence of any written words of consent, Zier presented no proof that Wolsieffer had the written authority to allow her to bind Lewis to a sale of real property. Without such written authority, Wolsieffer had no power to bind Lewis. Section 28-2-903(1)(d), MCA.

¶22 Second, Zier's own actions up until the cessation of negotiations are inconsistent with the existence of a settled contract. The February 1 letter from his attorney Towe was clearly a counter-offer containing contract terms that the District Court properly found to be material. Towe's delivery of modified documents containing provisions demanded by Zier, along with a deadline for acceptance after which Zier's "offer" would be withdrawn, are inconsistent with Zier's professed belief that the parties had entered an

---

[1] Comparing telegrams to emails is not the issue in this case.

8

enforceable contract. Clearly the parties were still in negotiation at the time Towe sent the letter with the counter-offer, and Lewis did not accept the counter-offer.

¶23 A party may not obtain specific performance without first establishing that a valid and binding contract exists. *Austin*, 274 Mont. at 62, 906 P.2d at 674; *Thornton v. Niswanger*, 263 Mont. 390, 393, 868 P.2d 633, 635 (1994). Since the District Court properly held that there was no contract between the parties, Zier was not entitled to a decree of specific performance. If the District Court had attempted to order specific performance, there would have been no way to determine the terms of the agreement. Zier argues that the parts of the contract that had not been agreed to were mere details that could be resolved by "usage and practice." However, as the District Court found, the matters that remained unresolved when negotiations ended were not mere details but were critical issues. Zier has not suggested any reasonable way that the District Court could have resolved them by application of "usage and practice."

¶24 Zier argues that there was partial performance of the contract because he sold his property in Wyoming in anticipation of purchasing the Lewis property. Whether there has been sufficient part performance to take an otherwise unenforceable contract out of the statute of frauds is an issue of law, and the part performance must be "unequivocally referable to [the] contract." *Austin*, 274 Mont. at 61, 906 P.2d at 673-74. Acts undertaken in contemplation of eventual performance are not acts which "truly constitute part performance of the contract so as to take it out of the operation of the statute of frauds." *Austin*, 274 Mont. at 61, 906 P.2d at 673-74. In *Austin*, this Court specifically

9

held that attempts to sell other property in anticipation of buying the disputed property did not constitute acts of part performance of the disputed contract.

¶25   The same result applies here. Zier sold his Wyoming property to raise money in contemplation of the eventual purchase of the Lewis property. The sale was not, however, an act in performance of any contract with Lewis so as to take the transaction out of the statute of frauds. Moreover, Zier cannot rely upon principles of promissory estoppel, which are inapplicable to contracts subject to the writing requirements of the statute of frauds. *Austin*, 274 Mont. at 62, 906 P.2d at 674.

¶26   Zier contends that the contract to sell the ranch should be enforced on equitable grounds. Where the parties admit the existence of a contract but one attempts to avoid it by invoking the statute of frauds, courts are more inclined to enforce the contract on equitable grounds. *Hayes v. Hartelius*, 215 Mont. 391, 396, 697 P.2d 1349, 1353 (1985); *Hillstrom*, 188 Mont. at 395-96, 614 P.2d at 470. These principles are not applicable here where Lewis disputes the existence of a contract and his position was upheld by the District Court.

¶27   We therefore affirm the District Court's determination that no contract existed and its order granting summary judgment for Lewis

¶28   *Issue Two: Whether the District Court properly awarded attorney fees to Lewis.* The District Court's order on summary judgment awarded attorney fees and costs to Lewis. The decision to award fees was based upon the equitable power of a court to make a party whole. *Foy v. Anderson*, 176 Mont. 507, 580 P.2d 114 (1978); *Holmstrom Land Co. v. Hunter*, 182 Mont. 43, 595 P.2d 360 (1979). This is a narrow exception to

10

the general rule that a prevailing party is not entitled to attorney fees absent a statutory or contractual basis. *Kennedy v. Dawson*, 1999 MT 265, ¶ 52, 296 Mont. 430, 989 P.2d 390.

¶29 The District Court found that Zier acted in "disregard of a clear, certain legal standard of contract and agency law as it pertains to the sale of real property" by prosecuting the lawsuit on the theory that Wolsieffer had ostensible authority to bind Lewis to sell the land. In addition, the lis pendens filed by Zier along with the complaint clouded title to the Lewis property and made it impossible to sell to others. All this, the District Court found, caused Lewis to incur "significant attorney's fees to prove the obvious." Since the District Court found that Zier's lawsuit was without merit, the *Foy* exception applied.

¶30 The District Court held a hearing on the award of attorney fees. Lewis presented the actual billings from its attorney along with expert testimony as to the reasonableness of the fee request, following the factors set out in *Chamberlin v. Puckett Const.*, 277 Mont. 198, 921 P.2d 1237 (1996).[2] Zier offered only his own attorney's billing for the case, but no testimony or other evidence as to the reasonableness of Lewis' attorney fee request or the hourly rate charged. Upon this record, the District Court stated that it was "left little room to deviate from a finding for Lewis on his request for attorneys' fees in all respects."

---

[2] Those factors are the amount and character of the services; the labor, time and trouble involved; the character and importance of the litigation; the amount of money or the value of the property affected; the professional skill and experience required; the attorney's character and standing in the profession; and the result secured by the attorney. *Chamberlain*, 277 Mont at 205, 921 P.2d at 1241-42.

¶31 Zier argued in the District Court, as he argues on appeal, that the contract was formed when he talked with Lewis on the phone, and that the writings confirming the agreement for purposes of the statute of frauds were the emails sent by Lewis' assistant Wolsieffer. The following discussion occurred between the District Court and Zier's attorney in connection with the motion for summary judgment:

> The Court: So, obviously, you have to agree that the only—I mean the only way that you could prevail here on this motion is to indicate that [Wolsieffer] was some sort of an agent of the Lewis trust, that her emails bound Lewis trust to this agreement, correct?
>
> Mr. Towe: That's correct.
>
> The Court: And the law requires that if an agent of the party engages in this, that the agreement—let me just quote it—"The agreement if made by an agent of the parties sought to be charged is invalid unless the authority of the agent is in writing and ascribed by the party sought to be charged."
> So, I guess the question I have for you is: Do we have an instrument here whereby it indicates in writing that this [Wolsieffer] is an agent for Lewis trust?
>
> Mr. Towe: We have ostensible authority, clear authority because there's no question but what all communication was done through [Wolsieffer]. Who was he supposed to assume had the authority to act? There was nothing indicating to the contrary. And consequently, she was the one that he addressed.
>
> The Court: The law requires this writing. And you're telling me that you have a theory of ostensible authority. I guess my question is: Do you have this document in writing that indicates [Wolsieffer] is an agent and has the authority to act on behalf of the trust? Is there such a document?
>
> Mr. Towe: I don't know of such a document.

The District Court was confronted with the question of whether this explanation was sufficient to save Zier's lawsuit from a declaration that the claims were frivolous. The

12

District Court decided that the explanation--that Zier assumed the existence of Wolsieffer's authority--was insufficient.

¶32    The District Court did not make an error of law in awarding attorney fees to Lewis because the award was within the discretion provided by *Foy*.  Further, the District Court did not abuse its discretion by relying on the factors in the case that indicated that Zier's claim was frivolous.  Zier presented no facts or cogent argument to avoid the conclusion that there was no mutual consent to the terms of a contract to sell the Lewis land.  Zier similarly presented no facts or cogent argument to avoid application of the writing requirements of the statute of frauds.  Moreover, Zier's complaint prayed for an award of attorney fees and costs against Lewis.

¶33    Zier also argues that the amount of fees awarded was unfair, comparing the much lower fees awarded in *Foy*.  As the District Court found, Zier did not present any evidence to materially contest the hours claimed by Lewis' attorney or the hourly rate.  Zier did not present any testimony to counter the expert testimony presented by Lewis that the fee request was reasonable.  Zier cannot complain about the amount of the fee award when he presented little or nothing to the District Court to contest the fee award.

¶34    The *Foy* exception allowing an equitable award of attorney fees does not presuppose that the award of fees will be great or small.  As the *Foy* opinion noted, each such case must be decided on its own facts.  *Foy*, 176 Mont. at 511, 580 P.2d at 117.  If a litigant is entitled to an award of fees, the amount of fees must be determined under the factors set out in the *Chamberlin* case, as the District Court did here.

13

¶35    We find no error or abuse of discretion and affirm the District Court's award of

fees and costs.

/S/ MIKE McGRATH

We concur:

/S/ JAMES C. NELSON
/S/ PATRICIA O. COTTER
/S/ JOHN WARNER
/S/ BRIAN MORRIS