
04-749

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 80

RICHARD ELDREDGE,

Plaintiff and Appellant,

v.

ASARCO INC., and RETIREMENT BENEFIT PLAN
FOR SALARIED EMPLOYEES OF ASARCO, INC.,

Defendants and Appellees.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. ADV 02-700
Honorable Dorothy McCarter, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

John C. Doubek, Doubek & Pyfer, LLP, Helena, Montana

For Appellees:

Robert L. Sterup, Jr., Holland & Hart, LLP, Billings, Montana

Submitted on Briefs:    February 23, 2011

Decided:    April 19, 2011

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 Richard Eldredge (Eldredge) appeals from the findings of fact, conclusions of law, and order of the First Judicial District, Lewis and Clark County, that dismissed his claims for retirement benefits against ASARCO Inc. and Retirement Benefit Plan for Salaried Employees of Asarco, Inc. (collectively, Asarco). We reverse in part, affirm in part, and remand for entry of judgment.

¶2 We restate the issues on appeal:

¶3 *Did the District Court correctly conclude that Eldredge did not qualify for Asarco's 70/80 retirement benefit because Asarco had offered him a comparable position in metals accounting in its Arizona office?*

¶4 *Does substantial credible evidence support the District Court's finding that Asarco provided or made available to Eldredge copies of the retirement plan that included the exclusion clause for employees who had been offered comparable positions?*

¶5 *Was Eldredge an employee or an independent contractor after December 31, 2001, for purposes of calculating time earned for the 70/80 benefit?*

¶6 *Did the District Court correctly decline to rule on the issue of penalties under 29 U.S.C. § 1132(c)?*

FACTUAL AND PROCEDURAL BACKGROUND

¶7 Eldredge worked at Asarco's plant in East Helena for about 28 years. Asarco told Eldredge in December 2001 that his employment would end on December 31, 2001. Eldredge continued to work for Asarco under what it termed a "consulting agreement" from

2

January 1, 2002, to September 13, 2002. Eldredge asserts that as of July 31, 2002, his combined age and years of employment totaled 80 years and entitled him to Asarco's 70/80 retirement benefit. Asarco denied the benefit claim because Eldredge previously had rejected a comparable job offer and because Eldredge's work under the consulting agreement had not counted toward the required 80 years. Eldredge sued under the Employee Retirement Income Security Act (ERISA) for payment of the benefit. The District Court held a non-jury trial on April 26 and 27, 2004. The court concluded that Eldredge's rejection of the comparable job offer precluded his eligibility for the 70/80 benefit. Eldredge appeals.

¶8     Eldredge worked as a maverick, weighmaster, engineer, consultant, and metals accountant during his employment with Asarco. Asarco suspended operations at the East Helena plant in February 2001 and began laying off employees pursuant to a reduction-in-force plan. Eldredge avoided the layoffs and continued to work as a metals accountant throughout 2001.

¶9     Asarco offered Eldredge a position in March 2001 as a metals accountant in its office in Tucson, Arizona. Eldredge and his wife traveled to Arizona in March 2001 to consider the position. The couple explored the northern part of Tucson and considered where they might live. The Arizona position constituted a substantially similar job to Eldredge's East Helena job. The Arizona position offered a 5% increase in salary and relocation benefits. The relocation benefits included payment for a house hunting trip, one month's salary, moving costs, $5,000 for miscellaneous expenses, and up to $5,000 in closing costs involved in selling Eldredge's East Helena house.

3

¶10 Eldredge knew that he would be laid off eventually from the East Helena plant. Eldredge expressed concern that he would lose his retirement benefits if he did not take the Arizona job. He sent Pam Reil, an Asarco Human Resources employee, an email on March 15, 2001, that requested a calculation of his time earned for the 70/80 benefit. The email stated, "I calculate that I will have 324 months of service in July of this year. That is about the time I think I will be laid off if I choose to remain in Helena."

¶11 Eldredge also discussed the job transfer with John Shaw, the East Helena plant manager. Eldredge informed Shaw that he would not accept the Arizona position and would remain at the East Helena plant in hopes that his employment would continue until he had achieved the required years for the 70/80 benefit. Eldredge also asked Lloyd Doney, Asarco's East Helena human resources representative, to calculate how long he must remain employed to qualify for the benefit. Eldredge received an email from Doney on April 23, 2001, that informed Eldredge that he would not obtain the requisite 80 years unless his employment lasted through July 2002.

¶12 Eldredge turned down the Arizona job offer in April 2001. Eldredge decided that relocation to Arizona would not be financially beneficial for his family. Eldredge's wife held a good job in Helena, and relocation would have forced her to quit her job and forego her retirement benefits. Eldredge also expressed concern with the distance between the Arizona job location where he would work and the town where he would live. Eldredge also recognized that no assurances existed that the Tucson plant would not suspend operations like the East Helena plant.

4

¶13    Asarco did not offer Eldredge any other job positions.  Asarco advised Eldredge in December 2001 that his employment would be terminated on December 31, 2001.  Asarco informed Eldredge that he could continue to work as a contracted consulting agent.  Asarco entered similar agreements with other employees as it attempted to reduce its employee workforce by redesignating its former employees as independent contractors.

¶14    Eldredge signed the consulting agreement provided by Asarco in an effort to keep his job.  Eldredge continued all of his former job duties under the consulting agreement.  Eldredge assumed additional job duties made necessary by the reduced workforce, including metals disposition, general accounting, accounts payable and receivable, account coding, and night watchman.

¶15    Eldredge received substantially the same income under the consulting agreement as he had before December 31, 2001.  The consulting agreement provided for 110% of his former salary, with the additional 10% intended to cover Eldredge's social security taxes.  Eldredge received a form 1099 for his earnings under the consulting agreement and reported self-employment income on his state and federal tax returns.

¶16    Eldredge additionally began receiving in January 2002 a severance benefit consisting of 52 weeks of compensation.  The severance benefit approximately reflected his former annual salary.  Eldredge acknowledged that Asarco directly deposited the severance payments into his bank account while he worked under the consulting agreement, but maintained that he remained an employee.

¶17    The consulting agreement also provided for a three month term beginning on January 1, 2002. Asarco and Eldredge did not formally renew the contract after the three months expired. Eldredge continued working for Asarco and receiving his contractual salary until September 13, 2002.

¶18    As an Asarco employee, Eldredge participated in Asarco's retirement plan, known as the Retirement Benefit Plan for Salaried Employees of Asarco, Inc. Several editions of the plan existed during Eldredge's tenure at Asarco. Eldredge claims that he only possessed and had access to the 1989 edition. The 1989 edition does not include the comparable position exclusion clause. Eldredge asserts that Asarco should have provided him with a 1999 or newer edition that would have included the comparable position exclusion clause. The plan also existed in a summary form and in a complete form. The summary plan description included summary explanations of the benefits, whereas the complete benefit plan provided detailed explanations of the benefits and definitions of terms.

¶19    The plan provided an accelerated pension benefit for certain involuntarily terminated employees known as the 70/80 benefit. The 70/80 benefit became available to employees under certain conditions. The summary plan description provided that the 70/80 benefit became available if adverse economic conditions caused the Asarco plant, mine, or office to permanently and totally shut down or caused the elimination of the employee's position. The 1999 version of the summary plan description included a clause that stated that an employee would not be eligible for the 70/80 benefit if Asarco offered the employee a

comparable position. No definition of comparable position existed in the summary plan description.

¶20 The complete benefit plan defined comparable position as a position that included a salary not more than two salary grades below the employee's current grade or, if no salary grade system existed, then a position with a comparable salary. The parties do not dispute that the Arizona position would have qualified under the definition as a comparable position.

¶21 Eldredge knew that refusal of the Arizona position could result in forfeiture of the 70/80 benefit because he might be laid off before he had obtained the requisite 80 years of combined age and employment at the East Helena plant. Eldredge did not express concern, however, that refusing the Arizona position could jeopardize his eligibility for the benefit because of the comparable position exclusion clause. Eldredge claimed he did not know about the comparable position exclusion clause because Asarco had not provided him with a copy of the updated plan, a copy of the complete benefit plan, or a definition of comparable position. Eldredge also alleged that no one counseled him when he considered the Arizona job offer regarding the potential consequences to his eligibility for the retirement benefit.

¶22 Eldredge also hoped that he would continue to accrue time toward the 70/80 retirement benefit while he worked under the consulting agreement. The consulting agreement included a clause that excluded retirement benefits. The clause stated, "[c]onsultant acknowledges that he/she is not entitled to receive retirement, insurance or other benefits available to Asarco employees." Eldredge claimed that several Asarco officials assured him that he would get credit for the 70/80 benefit while working under the

consulting agreement. Lloyd Doney, John Shaw, and Amond Blaine Cox, plant manager during the suspended operations, each testified that they had no authority to give such assurances. The District Court found that no evidence supported Eldredge's claim that Asarco officials had assured him that he would continue to earn credit under the consulting agreement.

¶23    The District Court's findings of fact in paragraph 18 demonstrates that the court made a mistake regarding the timing of information provided to Eldredge. Finding 18 states that Eldredge sent a letter to Pam Reil on December 18, 2001, that requested a copy of the company's retirement plan and severance policy. The court found that Reil made a handwritten comment on the letter that she had sent the requested information in January 2002. The court then found that Reil had specifically told Asarco's benefits specialist Debra Baker, who visited the East Helena plant in March 2001, that she had mailed Eldredge a copy of the summary plan description. Reil could not have received Eldredge's request in December 2001, mailed the information in January 2002, and informed Baker of the mailing before Baker's trip in March 2001.

¶24    The record reveals that Baker's trip occurred in March 2001 and preceded Eldredge's December 2001 request for the retirement plan and severance policy. Baker traveled to the East Helena plant in March 2001 and held meetings with employees to explain benefits in light of the plant's February 2001 announcement of impending shut down and layoffs. Eldredge attended some of the meetings held by Baker.

8

¶25    Finding 18 also includes the court's findings that Reil never received any further requests from Eldredge for the information. The court found that Eldredge could have accessed Asarco's retirement plans in Asarco's human resources office. The court finally found that Eldredge had reasonable access to the retirement information and that Eldredge had failed to make a reasonable attempt to obtain it.

¶26    The court ordered post-trial briefing. Eldredge submitted a post-trial brief on August 16, 2004, that asserted for the first time a claim for penalties under 29 U.S.C. § 1332(c) for Asarco's alleged failure to provide plan documents. Asarco did not file a post-trial brief. The court did not rule on Eldredge's penalties claim. Eldredge argues that this Court should award the penalties.

¶27    Asarco argues that Eldredge should be barred from bringing suit because he had failed to exhaust available administrative remedies. Asarco earlier had moved for summary judgment, based, in part, on the exhaustion issue. Asarco's summary judgment argument consisted solely of an unsupported assertion that disputed whether Eldredge had made a benefits claim under the retirement plan. Asarco withdrew its motion for summary judgment and proceeded to trial. Asarco's trial brief contains a one sentence statement of the law regarding the exhaustion issue. The District Court did not address the exhaustion issue. Asarco argues on appeal that "the District Court correctly did not address the issue," because the court concluded that Eldredge forfeited eligibility for the 70/80 benefit when he had refused the Arizona job offer. Asarco argues to this Court, nonetheless, that Eldredge first should have exhausted his administrative remedies.

9

¶28 The District Court issued its findings of fact, conclusions of law, and order on October 14, 2004. The court concluded that Eldredge lost eligibility for the 70/80 benefit when he had refused the Arizona position. The court concluded that the Arizona position met the retirement plan's definition of a comparable position. The court rejected Eldredge's equitable defenses that he had not known of the comparable position exclusion clause and that Asarco had led him to believe that time would accrue under the consulting agreement for the 70/80 benefit. The court concluded that Asarco had provided Eldredge with a summary plan description that included the comparable position exclusion provision and that Eldredge could have obtained further information. The court found it unnecessary to address whether Eldredge's nine-month tenure under the consulting agreement constituted employment for purposes of benefit eligibility.

¶29 Asarco filed a petition in the United States Bankruptcy Court for the Southern District of Texas in 2005. This Court issued an order on October 26, 2005, to stay further proceedings until the Bankruptcy Court lifted the automatic stay. The Bankruptcy Court entered an order on August 4, 2010, that lifted the stay so that this Court could decide Eldredge's appeal. We issued an order on January 11, 2011, to place Eldredge's appeal back on our calendar at the earliest available date.

STANDARD OF REVIEW

¶30 We review the factual findings of a district court sitting without a jury to determine whether they are clearly erroneous. *Steiger v. Brown,* 2007 MT 29, ¶ 16, 336 Mont. 29, 152 P.3d 705. A district court's findings are clearly erroneous if they are not supported by

substantial evidence, if the district court has misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been committed. *Id.* We review the evidence in the light most favorable to the prevailing party when determining whether substantial credible evidence supports the district court's findings. *Id.* We review for correctness a district court's conclusions of law. *Id.*

DISCUSSION

¶31 We first address Asarco's exhaustion of remedies argument because it conjures the propriety of this Court's subject matter jurisdiction. *Stanley v. Lemire,* 2006 MT 304, ¶¶ 29-31, 334 Mont. 489, 148 P.3d 643. ERISA itself does not require a plan participant to exhaust administrative remedies. *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 626 (9th Cir. 2008). The federal courts have created a "prudential exhaustion requirement," however, that requires a plan participant to exhaust a plan's own internal review procedures. *Id.* This prudential "exhaustion requirement . . . is not a jurisdictional requirement," *Id.* at n. 2, and does not deprive this Court of the concurrent subject matter jurisdiction conferred under 29 U.S.C. § 1132(e)(1). The federal courts recognize exceptions to the prudential exhaustion requirement, including an exception when resort to the administrative route would be futile and an exception when a plan does not establish a reasonable claims procedure. *Id.* at 626-27.

¶32 Asarco simply claimed in its motion for summary judgment that Eldredge had not pursued his administrative remedy "under the Plan in question." Asarco provided no explanation as to what comprised the plan's administrative remedies. Asarco withdrew its

summary judgment motion. Asarco again in its trial brief asserted, without explanation, that Eldredge had failed to exhaust his administrative remedies. Asarco did not file the court-ordered post-trial proposed findings of fact and conclusions of law. Asarco points to nothing in the record on appeal to demonstrate it presented evidence to explain the contours of the plan's administrative remedies and the reasonableness of the plan's claim procedures.

¶33    Asarco has submitted a copy of the retirement summary plan description. We note that the plan requires that "[a]ny application or claim for benefits under the Plan shall be filed in writing with the Secretary of the Pension Board." The plan contains no requirement that a claimant must exhaust its remedies before the Pension Board before filing an action in district court. We further note that the plan authorizes the Pension Board to determine "[a]ll questions relating to the interpretation of the Plan, eligibility of employees and the amount of benefits payable in each individual case." The plan makes no mention as to how an employee should resolve legal questions of the type raised by Eldredge. We are not convinced that the Pension Board had authority to determine the legal issues raised by Eldredge's complaint. We decline to apply the prudential exhaustion requirement here in light of Asarco's failure to point to evidence in the trial record that shows that "a reasonable claims procedure" existed for Eldredge that would have yielded "a decision on the merits" of Eldredge's legal claims. *Vaught*, 546 F.3d at 627 (citing 29 C.F.R. § 2560.503-1(l)).

¶34    *Did the District Court correctly conclude that Eldredge did not qualify for Asarco's 70/80 retirement benefit because Asarco had offered him a comparable position in metals accounting in its Arizona office?*

12

¶35 Eldredge argues that he did not know that his refusal of the Arizona position compromised his eligibility for the 70/80 benefit. Eldredge also argues that Asarco did not offer him a comparable job when Asarco actually terminated his employment and that Asarco cannot bootstrap the March 2001 Arizona offer for purposes of denying retirement benefits. Asarco responds that the 70/80 benefit intends to protect persons affected by a total, permanent plant shutdown or the elimination of their position. Asarco contends that Eldredge waived his eligibility to the 70/80 benefit when he refused the comparable job position in full knowledge that he could be laid off from the East Helena plant before obtaining the requisite 80 years.

¶36 The summary plan description provided that an employee may be eligible for the 70/80 benefit if the Asarco operation permanently and totally shut down or if Asarco eliminated the employee's position. The plan excluded eligibility "for this special situation benefit *if you are offered a comparable position* with the Company or a successor employer." (Emphasis added.) The District Court concluded that this clause excluded Eldredge from eligibility for the 70/80 benefit. We disagree.

¶37 Asarco announced in February 2001 that it would be suspending operations at its East Helena plant and that employees would be laid off under a reduction-in-force plan. Asarco did not terminate Eldredge's employment in February 2001. Eldredge worked as an employee for the remainder of 2001. Asarco notified Eldredge in December 2001 that Asarco had eliminated his position effective as of December 31, 2001. Asarco did not offer Eldredge a comparable position when it informed Eldredge in December 2001 that his

13

position had been terminated.  Asarco also did not offer Eldredge a comparable position on September 13, 2002, when it terminated Eldredge's work under the so-called "consulting agreement."

¶38     The only job offer that Asarco extended to Eldredge occurred in March 2001. Eldredge visited the Arizona office, but turned down the offer to transfer in April 2001.  The Arizona job offer meets the retirement plan's definition of comparable position.  The comparable position clause does not apply to Eldredge, however, because the Arizona job offer occurred at least 8 months before Asarco informed Eldredge that his position had been eliminated.

¶39     The language of the comparable position clause requires that Asarco offer the employee a comparable position concurrently with the permanent and total shut down of a plant or with the elimination of an employee's position.  The paragraph describing the 70/80 benefit consists of two sentences.  The first sentence describes the conditions, like a total plant shutdown or the elimination of the position, that trigger an employee's eligibility for the benefit.  The second sentence provides the comparable position exclusion: "[y]ou would not be eligible for this special situation benefit if you are offered a comparable position with the Company or a successor employer."

¶40     The exclusion clause applies to situations where the employee refuses a comparable position in the event of, or following, one of the conditions described in the first sentence, like a total plant shutdown or the elimination of an employee's position.  It does not appear conclusively that either event had occurred at the time that Asarco offered Eldredge the

14

Arizona job. The District Court found only that Asarco had "suspended" operations in February 2001, but had continued operations as it "needed manpower to maintain the plant." Asarco had not permanently and totally shut down its East Helena operations in February 2001, and it had not eliminated Eldredge's position in February 2001.

¶41 Asarco asserts that "[t]he 70/80 benefit was intended for persons adversely affected by a plant shutdown." Our interpretation of the exclusionary clause advances Asarco's intent to protect workers whose jobs have been eliminated by adverse economic conditions. Our interpretation also protects Asarco from having to pay the 70/80 benefit to workers who refuse to accept a comparable position within the company so that they can collect benefits. The interpretation further protects employees from Asarco's assertion of the defense that an old, stale job offer satisfied the comparable position exclusion clause.

¶42 The comparable position exclusion clause provides no time frame to evaluate when Asarco must offer an employee a comparable position. As a result, the clause provided employees with no guidance as to when an employee's rejection of a comparable position could have jeopardized the employee's eligibility for retirement benefits. If Asarco had intended a job offer made "within 6 months" or "within 3 years" of the elimination of the employee's position to satisfy the comparable position exclusion clause, then Asarco should have used language that notified its employee of his or her eligibility for benefits and of the potential consequences of refusing a job offer. Asarco, as the drafter of the plan, clearly had the ability to insert this type of requirement into the plan.

15

¶43 Asarco's plan failed to notify employees of the potential consequences of refusing a comparable job offer. This Court generally construes any ambiguity or omission in a contract against the drafter. *Performance Mach. Co. v. Yellowstone Mt. Club, LLC,* 2007 MT 250, ¶ 39, 339 Mont. 259, 169 P.3d 394. ERISA proves no exception as courts have construed ambiguities in pension plans against the drafter and in favor of the participant. *See e.g. Barnes v. Indep. Auto. Dealers Assn. of Cal. Health & Benefit Plan,* 64 F.3d 1389, 1393 (9th Cir. 1995). We will not read notification into Asarco's retirement plan at this late time in order to deny Eldredge benefits. We reverse the District Court's conclusion that the comparable position exclusion clause rendered Eldredge ineligible for the 70/80 benefit because of his April 2001 refusal of the Arizona job offer.

¶44 *Does substantial credible evidence support the District Court's finding that Asarco provided or made available to Eldredge copies of the retirement plan that included the exclusion clause for employees who had been offered comparable positions?*

¶45 We have determined that Asarco did not extend a comparable job offer to Eldredge when it terminated his employment that could have satisfied the comparable position exclusion clause. Consequently, we need not address whether substantial credible evidence supports the District Court's finding that Asarco provided or made available to Eldredge copies of the retirement plan.

¶46 *Was Eldredge an employee or an independent contractor after December 31, 2001, for purposes of calculating time earned for the 70/80 benefit?*

16

¶47    Eldredge argues on appeal that Asarco's reclassification of its employees as independent contractors under so-called consulting agreements constituted a sham. Eldredge claims that his job duties did not change and that Asarco continued to treat him as an employee. Asarco responds that the District Court correctly did not address the employment status argument because Eldredge's refusal of the Arizona position precluded his 70/80 benefit eligibility. Asarco also argues that New York law or federal law, rather than Montana law, governs the determination of whether Eldredge worked as an employee or as an independent contractor.

¶48    Eldredge and Asarco presented evidence to the District Court at trial regarding whether Eldredge worked as an employee or as an independent contractor. The court found that Asarco required its East Helena plant to reduce its employee workforce by redesignating its employees as independent contractors. The court found that Eldredge and other redesignated employees continued all of their former job duties, received substantially the same income, and continued to be supervised as employees, without the independence traditionally retained by contractors. The court did not make a conclusion regarding Eldredge's employment status, however, because of its ruling in Asarco's favor on the comparable position issue.

¶49    We first consider Asarco's argument that Montana law does not govern the employment status issue. Asarco argues that the retirement plan included a governing law provision that required, "[t]he provisions of the Plan shall be construed and administered in accordance with the laws of the State of New York." The governing law provision has no

application, however, because the employment status determination does not require the Court to construe or administer any provisions of the retirement plan.

¶50     Asarco then cites *Nationwide Mutual Insurance Company v. Darden*, 503 U.S. 318, 323 (1992), for the assertion that federal law governs the distinction between employee and independent contractor. The United States Supreme Court adopted a common-law test for determining who meets the definition of "employee" under ERISA as defined at 29 U.S.C. § 1002(6). *Nationwide Mut. Ins. Co.*, 503 U.S. at 322-24. Asarco misapprehends the application of *Nationwide*. This appeal concerns whether Eldredge's nine months of work in 2002 constituted employment or independent contractor work, not whether Eldredge qualifies as an "employee" under ERISA. Eldredge unquestionably qualifies as an employee under ERISA, as interpreted in *Nationwide*, for his many years of employment at the East Helena plant.

¶51     We agree with Eldredge that Montana's common law governs whether his work in 2002 constituted employment or the work of an independent contractor. The right to control constitutes the most crucial factor in distinguishing between employees and independent contractors. *Am. Agrijusters Co. v. Mont. Dept. of Labor & Indus.*, 1999 MT 241, ¶ 22, 296 Mont. 176, 988 P.2d 782. Four factors guide the inquiry of whether a right of control exists sufficient to give rise to an employer-employee relationship: (1) direct evidence of right or exercise of control; (2) method of payment; (3) furnishing of equipment; and (4) right to fire. *Id.* at ¶ 21. We analyze each factor in turn.

18

¶52 Training, supervision, and review of completed job assignments indicate that an employer controls "how" an employee performs his work. *Id.* at ¶ 26. Eldredge retained the same job duties in 2002 as he had been doing as an employee. Eldredge also completed additional duties as assigned and directed by Asarco management. The District Court found that Eldredge and other employees who worked under consulting agreements "continued to be supervised as employees, without the independence traditionally retained by contractors." Asarco retained the right of control over Eldredge's job duties and performance.

¶53 Payment on a time basis strongly indicates employment status, whereas payment on a completed project indicates independent contractor status. *Id.* at ¶ 27. Eldredge received substantially the same income in 2002 under the consulting agreement. The consulting agreement provided that Eldredge would be paid $976 per week. Eldredge worked 40 hours per week. His compensation reflected the time spent at the East Helena plant. The consulting agreement did not base Eldredge's compensation on the completion of a project. Asarco's payment of Eldredge under the consulting agreement indicates employment status.

¶54 An employment relationship almost invariably exists where the employer furnishes valuable equipment. *Id.* at ¶ 33. Asarco provided Eldredge with all the tools and equipment that he needed to complete his work. Eldredge did not purchase or bring to the East Helena plant any additional equipment or materials to do his job in 2002.

¶55 The power to fire without incurring contractual liability demonstrates the power of control exercised by an employer of an employee. *Id.* at ¶ 35. The consulting agreement provided for three months work from January 1, 2002, to March 31, 2002. The parties never

formally renewed the contract or further negotiated Eldredge's work. Asarco terminated Eldredge's tenure at the East Helena plant in September 2002. Asarco did not incur any contractual liability for terminating Eldredge's work under the consulting agreement. The fact that Asarco retained the power to fire further indicates that Eldredge worked as an employee.

¶56 Asarco responds that it did not withhold social security or income tax, that Eldredge classified his income as self-employment income on tax forms, and that Asarco paid Eldredge on a different basis than the company's salary grade for employees. Asarco's attempt to reclassify Eldredge as an independent contractor by papering the working relationship with a "consulting agreement" and reclassifying Eldredge's compensation for tax purposes fails to transform Eldredge into an independent contractor. All factors point to the conclusion that Eldredge worked as an employee of Asarco during 2002. Asarco retained the right to control the details, methods, and means of Eldredge's work, and not just the end result of the work. *Am. Agrijusters*, ¶ 22.

¶57 Eldredge worked as an employee of Asarco until Asarco terminated his employment on September 13, 2002. The parties do not dispute that Eldredge would have earned 80 years of combined age and service for purposes of the 70/80 benefit in July 2002. We conclude that Eldredge accrued the requisite 80 years of combined age and employment that entitle him to 70/80 benefits under the retirement plan.

¶58 *Did the District Court correctly decline to rule on the issue of penalties under 29 U.S.C. § 1132(c)?*

20

¶59    Eldredge claims that 29 U.S.C. § 1132(c) entitles him to significant penalties for Asarco's alleged failure to provide plan documents within 30 days after his written request. Asarco responds that Eldredge failed to make the penalties claim in the District Court. Asarco argues that Eldredge did not raise the claim in his complaint and did not mention the claim during pretrial proceedings or during the trial. Asarco claims that Eldredge only raised the claim in his post-trial brief. We agree.

¶60    Eldredge's complaint stated that he sought redress pursuant to ERISA, "29 U.S.C. §§ 1001 et seq., and more particularly 29 U.S.C. § 1132(a)(1)(B)." Eldredge points to several paragraphs of his complaint that he alleges contain the claim for 29 U.S.C. § 1132(c) penalties. The paragraphs identified by Eldredge contain no mention of potential penalties or Asarco's alleged failure to provide a copy of the retirement plan.

¶61    M. R. Civ. P. 8(a) requires only a short and plain statement of the claim showing entitlement to relief and a demand for judgment for the relief sought. Eldredge's complaint contains neither a short and plain statement for relief nor a demand for judgment for the relief sought. Eldredge presented his argument for penalties in his post-trial brief only. Eldredge did not amend his complaint. Eldredge has not presented a claim for penalties and the District Court correctly refused to rule on the matter.

CONCLUSION

¶62    We reverse the District Court's conclusion that the comparable position exclusion clause precludes Eldredge's eligibility for the 70/80 benefit because he refused to accept the Arizona position. Asarco did not offer Eldredge a comparable position when it terminated

21

Eldredge's employment. We further determine that Eldredge's work from January 1, 2002, to September 13, 2002, under the consulting agreement constituted employment for which Eldredge earned time to be credited toward the 70/80 benefit. We deny Eldredge's request for penalties based on his failure to assert the claim in the district court proceedings. We remand for entry of judgment in Eldredge's favor on his claim that he qualified for Asarco's 70/80 retirement benefit.

/S/ BRIAN MORRIS

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ MICHAEL E WHEAT
/S/ JIM RICE

22