# FILED

October 25 2011

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 10-0629

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 262

AAA CONSTRUCTION OF MISSOULA, LLC,

        Plaintiff, Appellee and Cross-Appellant,

  v.

CHOICE LAND CORP., CLR PROPERTIES, INC.,
WAYNCO, INC., a/k/a WAYNCO CONSTRUCTION,
INC., and JOHN DOE TENANTS 1-6,

        Defendants, Appellants and Cross-Appellees.

| | |
|---|---|
| APPEAL FROM: | District Court of the Fourth Judicial District,<br>In and For the County of Missoula, Cause No. DV 08-265<br>Honorable John W. Larson, Presiding Judge |

COUNSEL OF RECORD:

        For Appellant:

                Quentin M. Rhoades and Nathan G. Wagner, Sullivan, Tabaracci & Rhoades,
                P.C., Missoula, Montana

        For Appellees:

                Torrance L. Coburn, Tipp & Buley, P.C., Missoula, Montana

                          Submitted on Briefs:  August 31, 2011

                                    Decided:  October 25, 2011

Filed:

                            _____
                                  Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1     Waynco Construction, Inc. (Waynco) appeals from the order and the findings of fact and conclusions of law entered by the Fourth Judicial District Court, Missoula County. The District Court concluded that Waynco materially had breached a contract with AAA Construction of Missoula, LLC (AAA). CLR Properties, Inc., and Choice Land Corp. (collectively CLR) appeal the denial of their claim for attorney fees. We affirm.

¶2     Waynco raises the following issues:

¶3     *Did the District Court properly conclude that AAA's bid constituted a binding contract between the parties?*

¶4     *Did the District Court properly deny CLR's claim for attorney fees?*

¶5     This case arises from a commercial real estate improvement project in Missoula, Montana. CLR hired Waynco as the general contractor. Waynco selected all subcontractors. Waynco supervised all work performed at the project. Waynco also controlled access to the site.

¶6     Waynco solicited a bid from AAA to perform concrete work. Brady Nelson, AAA's member/manager, and Robert Rozier, Waynco's president, walked through the site before AAA submitted its bid. Rozier explained the scope of work to Nelson. Rozier specifically advised Nelson not to bid on demolition and reconstruction for the front of the building.

¶7     Nelson submitted AAA's bid on March 30, 2007. The bid explicitly set forth the scope of work upon which AAA was bidding, including costs and measurements of work to

2

be performed. AAA's bid estimated the total cost at $94,918.25. Nelson submitted the bid to Chris Wright, the project's supervisor for Waynco.

¶8 Wright signed AAA's bid under the section entitled "Acceptance of Proposal." Wright made interlineations to the proposal, however, by crossing out the words "Acceptance of Proposal" and handwriting on the form "Pending contract with owner. Final scope/subcontract to follow. Thanks!" Waynco used AAA's bid to formulate Waynco's general contract bid to CLR. CLR accepted Waynco's bid.

¶9 AAA began work at the project site on May 1, 2007. Waynco requested that AAA perform additional demolition and paving work on the building's west side. The parties agreed that Waynco would pay AAA an additional $13,500 for this extra work on top of the $94,918.25 bid, for a total contract price of $108,419.25.

¶10 Waynco sent AAA a document entitled "Subcontract Agreement" on May 17, 2007—two weeks after AAA had begun work. The Subcontract Agreement contained work beyond what AAA had agreed to perform, including demolition and construction work for the front of the building. The Subcontract Agreement contemplated no increase in compensation for AAA.

¶11 AAA responded with a new bid of $206,858.25 for all the work contained in the Subcontract Agreement. AAA assumed that the Subcontract Agreement had expanded the scope of work in light of Waynco's directive in the site walk through to omit work for the front of the building. Waynco rejected AAA's $206,858.25 offer for the scope of work set forth in the Subcontract Agreement. AAA refused, in turn, to perform the additional work

3

without increased compensation. The parties failed in several attempts to negotiate a resolution on price for the additional work.

¶12     Rozier called Nelson on June 6, 2007, to advise Nelson to "[g]et your . . . ass into the building and sign the contract, or you'll never receive a nickel, and I'll refer this to my lawyer." AAA left the project that same day as AAA feared that it would not be paid for any of its work. AAA had completed a majority of the work outlined in AAA's bid by the time that it left the project. Waynco never paid AAA for any labor or materials.

¶13     AAA filed a construction lien on the property in the amount of $88,720.63. CLR petitioned the District Court to substitute a surety bond for the construction lien. The District Court discharged the lien and replaced it with the surety bond.

¶14     AAA filed a complaint against CLR and Waynco. AAA alleged that Waynco had breached the contract. AAA further alleged that CLR had been unjustly enriched from AAA's work. Waynco filed a counterclaim in which it alleged that AAA had breached the contract.

¶15     All parties filed cross motions for summary judgment. The District Court granted CLR's motion for summary judgment for the unjust enrichment claims, but both AAA's and Waynco's breach of contract claims proceeded to a non-jury trial. The District Court determined that AAA's bid constituted a binding contract between the parties. Waynco materially had breached the contract by failing to pay AAA for any goods or services that it had provided. The District Court awarded AAA the full amount of its $88,720.63 lien. The District Court also awarded AAA costs of $2,300.22 and attorney's fees of $23,318.13.

4

¶16    CLR sought its attorney fees for the lien foreclosure action pursuant to § 71-3-124, MCA.  CLR argued that the lien was not valid because the District Court discharged the lien in September 2007.  The District Court rejected CLR's claim that AAA's lien had been invalid.  The court noted that it found the lien valid in its November 2009 order, and had discharged the lien only when CLR substituted the surety bond.  Waynco and CLR appeal. AAA cross-appeals the District Court's grant of summary judgment to CLR on its unjust enrichment claim.  We need not address this issue in light of our result of the direct appeal issues.

## STANDARD OF REVIEW

¶17    We review the factual findings of a District Court sitting without a jury to determine whether they are clearly erroneous.  *Eldredge v. Asarco Inc.*, 2011 MT 80, ¶ 30, 360 Mont. 112, 252 P.3d 182.  A District Court's findings are clearly erroneous if they are not supported by substantial evidence, if the District Court has misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been committed.  *Eldredge*, ¶ 30.  We review the evidence in the light most favorable to the prevailing party when determining whether substantial credible evidence supports the District Court's findings.  *Eldredge*, ¶ 30.  We review for correctness a District Court's conclusions of law.  *Eldredge*, ¶ 30.  We note that whether a contract exists—a central issue in this case—presents a combined issue of fact and law.  *Johnston v. Palmer*, 2007 MT 99, ¶ 38, 337 Mont. 101, 158 P.3d 998.

## DISCUSSION

5

¶18 *Issue 1: Did the District Court properly conclude that AAA's bid constituted a binding contract between the parties?*

¶19 Identifiable parties capable of contracting, consent, a lawful object, and sufficient consideration comprise the essential elements of any contract. *Zier v. Lewis*, 2009 MT 266, ¶ 19, 352 Mont. 76, 218 P.3d 465. Consent must be mutual, and the parties must agree upon the same thing, in the same sense. *Zier,* ¶ 19. Acceptance of an offer on terms that vary from those offered represents a rejection of the offer. *Zier,* ¶ 19. This rejection puts an end to the negotiation unless the parties assent to the new terms. *Zier,* ¶ 19.

¶20 The District Court determined that AAA's bid constituted an offer that Waynco had accepted. Waynco asserts that it never accepted AAA's terms, so no contract existed between the parties. Waynco relies heavily on Wright's interlineations on AAA's bid to contend that Waynco intended to make a counter-offer rather than accept AAA's bid.

¶21 A party's intent regarding contract formation presents a question of fact. *See Thompson v. Lithia Chrysler Jeep Dodge of Great Falls*, 2008 MT 175, ¶ 32, 343 Mont. 392, 185 P.3d 332. The District Court cited substantial evidence to conclude that Wright had intended to accept AAA's bid. Wright, on behalf of Waynco, signed AAA's bid. Wright admitted that he accepted AAA's bid upon CLR's awarding of the general contract to Waynco. CLR awarded the contract to Waynco.

¶22 Other factors point to Waynco's acceptance of AAA's bid. Waynco controlled access to the project site. Waynco allowed AAA to commence work without any other agreement in place. AAA worked for over two weeks before Waynco sent the Subcontract Agreement

to AAA. Waynco allowed AAA's work to continue for over a month without any signed agreement in place except AAA's bid. These facts, viewed in a light most favorable to AAA, provide substantial evidence that Waynco intended to accept AAA's bid and that this acceptance established a contract between the parties. *Johnston*, ¶ 38.

¶23 Even if we agreed that Wright's interlineations represented a counter-offer, we still would be compelled to determine that a contract existed with AAA's bid constituting the bulk of the contract's terms. As previously noted, acceptance that varies the contractual terms represents no acceptance. *Zier*, ¶ 19. Acceptance that varies the proposed terms should be interpreted as a counter-offer that extinguishes the original offer. *Zier*, ¶ 19. The terms of a counter-offer generally can be determined only by reviewing the previous negotiations between the parties. Arthur L. Corbin, *Corbin on Contracts* vol. 1, § 3.35, 591 (Joseph M. Perillo ed., rev. ed., West 1993).

¶24 A counter-offer tends to incorporate all previously offered terms except those that the counter-offer expressly seeks to modify or add. Corbin, *Corbin on Contracts* at 491. As with any offer, a party may accept a counter-offer either through verbal acceptance or through performance. *See* §§ 28-2-501, 503, MCA. The accepting party generally demonstrates assent through performance with a counter-offer. Corbin, *Corbin on Contracts* at 492. Thus, even assuming that Waynco intended its interlineations to constitute a counter-offer, AAA accepted that counter-offer through its performance of its contractual obligations.

¶25 Waynco's alleged interlineated counter-offer implicitly incorporated the terms of AAA's bid. It simply added the interlineations as the additional terms. AAA manifested its

7

acceptance of this counter-offer through its commencement of work at the project site. A meeting of the minds occurred when AAA started performing its contractual obligations. Waynco indicated its acceptance when it allowed AAA to start working when Waynco controlled access to the site. This meeting of the minds created a contract between Waynco and AAA. *See Hetherington v. Ford Motor Co.*, 257 Mont. 395, 400-401, 849 P.2d 1039, 1043 (1993).

¶26    Waynco alternatively argues that the Subcontract Agreement modified any contract previously established by AAA's bid. Waynco cites the following facts to support this modification claim. Waynco alleges that Nelson orally agreed to the Subcontract Agreement. Second, Nelson submitted a payment application that complied with procedures set forth in the Subcontract Agreement. Waynco claims that Nelson's compliance with the payment procedures indicates AAA's consent to the Subcontract Agreement. Third, Nelson admitted to having signed the Subcontract Agreement on behalf of AAA. We address each of these claims in turn to determine whether the parties modified their original contract in the form of the Subcontract Agreement.

¶27    Written contracts may be modified through two methods. Parties may modify a written contract through a subsequent written contract. Section 28-2-1602, MCA. Parties also may modify a written contract by an executed oral agreement. Section 28-2-1602, MCA; *Matzinger v. Remco, Inc.*, 171 Mont. 383, 387, 558 P.2d 650, 652 (1976). Waynco alleges that Nelson orally agreed to the Subcontract Agreement. Waynco never performed its obligation to pay AAA for goods and services rendered, however, and AAA had not

8

performed the obligations that the Subcontract Agreement added to the obligations listed in AAA's bid. The parties had not fully executed the alleged oral agreement, and therefore, the alleged oral agreement could not operate as a modification to incorporate the terms of the Subcontract Agreement. *Matzinger,* 171 Mont. at 387, 558 P.2d at 652.

¶28 We next analyze whether Nelson's compliance with the Subcontract Agreement's payment procedures demonstrates AAA's assent. AAA's compliance with the Subcontract Agreement's payment procedures set forth in the Subcontract Agreement fails to establish the parties had modified the contract. AAA responded to the Subcontract Agreement with a new bid of $206,858.25. AAA expressly refused to perform the additional work as contemplated by the Subcontract Agreement, including the demolition and construction work for the front of the building. We cannot agree that AAA's alleged compliance with the payment process set forth in the Subcontract Agreement rises to the level of its assent to a written agreement or a fully executed oral contract. Section 28-2-1602, MCA.

¶29 Waynco further argues that Nelson admitted to having signed the Subcontract Agreement. This argument fails to recognize the axiomatic law governing offer and acceptance. An accepting party must communicate its assent to the offeror. Section 28-3-301(3), MCA. A written contract must be delivered before it becomes effective. Section 28-2-906, MCA. Waynco alleges that it discovered at trial that Nelson had signed the Subcontract Agreement. Nelson conceded on cross-examination that it was "possible" that he signed the Subcontract Agreement at some point. The District Court concluded—and Waynco does not dispute—however, that AAA never returned a signed Subcontract

9

Agreement to Waynco. Accordingly, AAA never manifested written consent to modify the original contract. Section 28-3-301(3), MCA.

¶30 Waynco argues as a final alternative that AAA's material breach precludes recovery even if AAA's bid represents the parties' contract. Waynco correctly notes that Montana law prevents a party in material breach from maintaining a breach of contract action against the other contracting party. *See R.C. Hobbs Enterprise, LLC v. J.G.L Distributing, Inc.*, 2004 MT 396, ¶ 35, 325 Mont. 277, 104 P.3d 503. The District Court determined, however, that Waynco, not AAA, was the party in material breach. AAA performed a majority of its contractual obligations before AAA left the site. AAA left the site only after Waynco threatened to withhold payment. Waynco failed to pay AAA for over a month's worth of goods and services rendered after AAA had left. These facts demonstrate that substantial evidence supports the District Court's conclusion that Waynco was the materially breaching party.

¶31 *Issue 2: Did the District Court properly deny CLR's claim for attorney fees?*

¶32 Section 71-3-124, MCA, provides in part that "the reasonable attorney fees must be allowed to the defendant against whose property a lien is claimed if the lien is not established." CLR contends that AAA's lien was not established because the District Court had discharged the lien. The District Court discharged the lien, however, only when CLR substituted a surety bond. This substitution did not mean that AAA had failed to establish the lien. The District Court only allowed CLR to substitute one form of security for another. Section 71-3-551, MCA.

10

¶33 The California Supreme Court's decision in *Hutnick v. United States Fidelity and Guaranty Company*, 763 P.2d 1326, 1330 (Cal. 1998), proves instructive as to how bonds affect liens. Like Montana, California law allows a lien's discharge upon the lienee filing a surety bond. The court in *Hutnick* recognized that a bond "does not change the relation or rights of the parties otherwise than in substituting its obligations for the [property] subject to the lien…." *Hutnick,* 763 P.2d at 1330. The court further explained that "it was not within the legislative purpose in permitting the substitution to deteriorate the lienor's rights." *Hutnick,* 763 P.2d at 1330. Montana's legislature similarly did not intend the lien substitute statute to allow lienees to recover their attorney fees by simply securing a surety bond despite their underlying liability. Section 71-3-551, MCA.

¶34 Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ JIM RICE

11