DA 13-0502

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2014 MT 14

COVENANT INVESTMENTS, INC.,

   Plaintiff and Appellant,

 v.

FIRST SECURITY BANK,

   Defendant and Appellee.

APPEAL FROM:  District Court of the Eighteenth Judicial District,
       In and For the County of Gallatin, Cause No. DV 12-596B
       Honorable Mike Salvagni, Presiding Judge

COUNSEL OF RECORD:

   For Appellant:

      James A. Patten, Patricia D. Peterman; Patten, Peterman, Bekkedahl
      & Green, PLLC; Billings, Montana

   For Appellee:

      Calvin L. Braaksma; Braaksma & Miller, PLLC; Bozeman, Montana

          Submitted on Briefs: December 10, 2013
               Decided: January 21, 2014

Filed:

         _____
               Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1    Covenant Investments, Inc. appeals the Eighteenth Judicial District Court's dismissal of its complaint against First Security Bank (FSB) under M. R. Civ. P. 12(b)(6) (Rule 12(b)(6)).  We affirm.

¶2    In February 2004, in preparation for an anticipated subdivision of property, R & D Holding,[1] and FSB's predecessor-in-interest, 360 Ranch Corporation, entered into a "Waiver of Right to Protest" the creation of Special Improvement Districts (SIDs) (Waiver) for the purpose of making road and/or intersection improvements to Cottonwood Road, between Huffine Lane and West Babcock Street, in Bozeman, Montana.  The Waiver provided that if SIDs were not utilized to complete these improvements, the parties to the Waiver would "participate in an alternate financing method" for completion of the improvements.  Subsequently, Covenant unilaterally completed the road upgrade project and then sought reimbursement from FSB.  FSB refused and Covenant filed this action.  The District Court granted FSB's motion to dismiss under Rule 12(b)(6).  Covenant appeals.

## ISSUE

¶3    Did the District Court err in dismissing Covenant's complaint against First Security Bank?

---

[1] It is unclear from the record whether R & D Holding is affiliated with Covenant or was Covenant's predecessor-in-interest to this property.  Covenant's complaint does not indicate a date upon which Covenant took possession of the relevant property.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4    In 2004, R & D Holding and 360 Ranch Corporation, then-owners of real property located along Cottonwood Road between W. Babcock Street and Huffine Lane, entered into the above-referenced Waiver.  The Waiver, in relevant part, provided:

> In consideration of receiving Final Plat approval from the City of Bozeman to subdivide the subject property . . . and in recognition of the traffic that will be generated by the development of the . . . property, R & D Holding and 360 Ranch Corporation and their successors and assigns, waive the right to protest the creation of one or more special improvement districts for street improvements to the east half of Cottonwood Road, extending from Huffine Lane to West Babcock.

> If Special Improvements Districts are not utilized for the completion of these projects, the undersigned agree to participate in an alternate financing method for completion of these projects on a fair share, proportionate basis as determined by square footage of the property, linear front footage of the property, taxable valuation of the property, or a combination thereof.
>
> .   .   .

> This waiver shall be a covenant running with the land and shall not expire.

¶5    No SIDs were implemented by the City of Bozeman.  At some point in time after the Waiver was signed, Covenant undertook and paid for all improvements to the intersection of Huffine Lane and Cottonwood Road.  In 2007, FSB constructed and took occupancy of its bank building at the corner of Huffine and Cottonwood.[2]  In early 2007, Covenant requested that FSB pay its fair share of the street improvements it had undertaken and FSB refused to reimburse Covenant for such costs.  In August 2012, Covenant filed its initial complaint.  In June 2013, it filed an amended complaint.  In its

---

[2] Covenant does not disclose, nor does the record reflect, when FSB purchased the property or when Covenant undertook the relevant improvements to Cottonwood Road.

complaints, Covenant alleged that FSB breached its obligation under the Waiver and sought to enforce the alternate financing provision of the Waiver.

¶6 FSB moved to dismiss Covenant's complaint arguing that it owed no duty or obligation to Covenant under the Waiver. Specifically, it contended (1) Covenant did not allege that a contract existed between the parties and that FSB breached such contract; (2) an "obligation" arises either from a contract or by operation of law and Covenant did not argue "operation of law" nor does "operation of law" apply to this case; and (3) Covenant is essentially seeking contribution and the three-year statute of limitations for contribution had expired.

¶7 Relying on *Scherpenseel v. Bitney*, 263 Mont. 68, 73-75, 865 P.2d 1145, 1148-49 (1993), the District Court stated, "The [c]ourt finds that generally, a covenant running with the land becomes part of a deed by operation of law and that a deed constitutes a contract founded upon a written instrument. . . . Thus, generally speaking, a written covenant running with the land creates an obligation (by way of a contract) and claims involving such covenants are subject to the eight-year statute of limitations set forth in § 27-2-202(1), MCA."

¶8 The court concluded, however, that the Waiver did not contain the "essential elements of a contract," and therefore did not bind FSB as a successor to the original covenantor. Specifically, the court found that the provision regarding alternative financing was "silent as to the nature, cost, and timing of these street improvements and who is responsible for determining the necessary improvements." It concluded that as a result of these omitted terms that were essential to the agreement, there was no mutual

4

assent and the financing provision was void for lack of certainty. Additionally, the court found that Covenant failed to mount a cogent argument that FSB's purported obligation arose by operation of law. The court therefore held that Covenant's complaint must be dismissed for failure to state a claim upon which relief can be granted.

## STANDARD OF REVIEW

¶9 We construe allegations contained in a complaint in a light most favorable to the plaintiff when reviewing an order dismissing a complaint under M. R. Civ. P. 12(b)(6). A court should not dismiss a complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. A district court's determination that a complaint failed to state a claim presents a conclusion of law. We review for correctness a district court's conclusions of law. *In re Estate of Glennie*, 2011 MT 291, ¶ 11, 362 Mont. 508, 265 P.3d 654 (internal citations omitted).

## DISCUSSION

¶10 *Did the District Court err in dismissing Covenant's complaint against First Security Bank?*

¶11 Covenant maintains on appeal that the Waiver signed by FSB's predecessor-in-title created a covenant running with the land that (1) did not expire, (2) was incorporated into the deed of conveyance, and (3) is binding upon the covenantor's successor. Covenant asserts that when the Bank purchased the property, it "stepped into the shoes of the covenantor" and became obligated to pay its fair share of the street improvements.

5

Therefore, its refusal to reimburse Covenant was a breach of the obligation set forth in the Waiver.

¶12    FSB counters that the District Court correctly concluded that no valid, enforceable contract existed between the parties. It further asserts that the Waiver does not evidence an obligation imposed upon it by operation of law. The Bank argues

> An obligation which arises by operation of law is one which devolves upon a person by the mere application of "established rules of law" to the facts of a particular transaction, "without the act or cooperation of the party himself." . . . Examples include the termination of a joint tenancy by the death of a joint tenant; the termination of a life estate by the death of the life tenant; and the application of the automatic stay in bankruptcy upon the filing of a bankruptcy petition. A document in which parties agree to participate in future negotiations in order to strike an agreement about street improvements is, by definition, *not* an obligation which exists by operation of law. [Emphasis in original.]

¶13    An obligation arises either from a contract between parties *or* by operation of law. Section 28-1-102, MCA (emphasis added). Covenant posits on appeal that the Waiver document that was executed by the predecessors to the parties to this litigation constitutes a contract. We agree that a contract was created; however, the question we must resolve is whether the District Court correctly determined that the provision in the contract regarding alternative financing was void for lack of certainty. Because we presume the existence of a contract, there is no basis for a resort to the mutually exclusive "operation of law" theory. Moreover, if a contractual provision were deemed void for lack of certainty, it could not in any event be resuscitated by operation of law.

¶14    It is well established that an enforceable contract contains the following essential elements: (1) identifiable parties capable of contracting; (2) consent of these parties; (3) a

6

lawful object; and (4) sufficient consideration. *Hanson v. Water Ski Mania Estates*, 2005 MT 47, ¶ 20, 326 Mont. 154, 108 P.3d 481. "Consent must be mutual, and the parties must agree upon the same thing, in the same sense." *AAA Constr. of Missoula, LLC v. Choice Land Corp.*, 2011 MT 262, ¶ 19, 362 Mont. 264, 264 P.3d 709.

¶15 The Waiver referenced the anticipated intersection improvements and the possible methods for determining how the costs of the improvements would be distributed between the property owners, but it failed to specify what type of financing would be utilized and by whom, and how and when the improvements themselves would be undertaken. As the District Court observed, "the provision is silent as to the nature, cost, and timing of these street improvements and who is responsible for determining the necessary improvements." As such, the Waiver is distinguishable from the agreement we held to be enforceable in *Hurly v. Lake Cabin Dev., LLC*, 2012 MT 77, 364 Mont. 425, 276 P.3d 854. There, we determined that a buy-sell agreement provided "sufficient information . . . to make the parties' obligations 'clearly ascertainable.'" *Hurly*, ¶ 21. Notwithstanding the parties' agreement to finalize terms for the construction of additional structures on the property, "there were clear and definite parameters for determining" the parties' obligations, and the agreement therefore "included all essential material terms." *Hurly*, ¶ 22. In contrast, without further detail in the Waiver regarding the process and financing for the improvements, "there was no meeting of the minds" as it pertains to the alternate financing provision and the provision is void for lack of certainty.

¶16 As noted above, there is nothing in the record or Covenant's complaint establishing when it took possession of the property, when it undertook and completed

the improvements, when FSB purchased the property, or whether FSB owned the property at the time the improvements were undertaken. Covenant's amended complaint merely alleges that Covenant "paid for all street improvements on the east side of Cottonwood Road between Huffine and West Babcock Streets, Bozeman, Montana," and "[w]hen [FSB] acquired the property, it incurred the obligation to reimburse [Covenant] for its proportionate fair share for those street improvements." This language suggests that Covenant completed the intersection improvements unilaterally without notifying or seeking participation from FSB or FSB's predecessor, 360 Ranch. The pertinent language utilized in the Waiver does not contemplate unilateral action; rather it reflects the intention that the parties would jointly "participate" in the planning, financing, and completion of these projects. The Waiver presumes future negotiations and collaborative efforts. Covenant's decision to proceed unilaterally with the intersection improvements deprived FSB (or 360 Ranch Corporation) of any such participation.

¶17 We conclude that the District Court did not err in determining that the Waiver's alternative financing provision was void for lack of certainty. We further conclude that by acting unilaterally Covenant waived its right to belatedly demand enforcement of the Waiver provision. We therefore conclude that the court did not err in dismissing Covenant's complaint seeking enforcement of the Waiver agreement.

¶18 Finally, we agree with FSB that if Covenant's complaint is construed as one for contribution, it is barred by the statute of limitations. Section 27-2-202(3), MCA, "provides for a three-year limitations period for the commencement of an action upon an obligation or liability, other than a contract, account, or promise, not founded upon an

8

instrument in writing." *N. Cheyenne Tribe v. Roman Catholic Church*, 2013 MT 24, ¶ 41, 368 Mont. 330, 296 P.3d 450. While the record does not provide the date the improvements were completed, Covenant asserts in its amended complaint that it first sought reimbursement for the improvements from FSB in 2007. It then filed its initial complaint in August 2012. This being so, an action by Covenant for reimbursement of its costs would be time-barred under § 27-2-202(3), MCA.

## CONCLUSION

¶19 For the foregoing reasons, we affirm the District Court's dismissal of Covenant's complaint for failure to state a claim upon which relief could be granted.


/S/ PATRICIA COTTER


We concur:


/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ LAURIE McKINNON